# Exhibit E



# Expert Report of Eben Perison

*In re SC SJ Holding LLC, et al.,*
United States Bankruptcy Court for the District of Delaware,
Case No. 21-10549 (JTD)

Submitted in support of *Accor Management (U.S.) Inc.'s Supplemental Opposition to Debtors' Motion to Estimate Maximum Amount of Accor's Claim* [Dkt. No. 230]

May 19, 2021

Armory Securities, LLC
1230 Rosecrans Avenue, Suite 660
Manhattan Beach, CA 90266
Tel: (310) 798-7777
Fax: (310) 798-6277

1.      I submit this report (this "Report") in support of Accor Management (U.S.) Inc.'s Supplemental Opposition to Debtors' Motion to Estimate Maximum Amount of Accor's Claim (the "Estimation Opposition") [Dkt. No. 230].[1]

2.      As required by rule 7026 of the Federal Rules of Bankruptcy Procedure and rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, this Report contains:

(i)      a complete statement of all opinions I will express and the basis and reasons for them;

(ii)     the facts or data I considered in forming them;

(iii)    any exhibits that will be used to summarize or support them;

(iv)     my qualifications, including a list of all publications authored in the previous 10 years;

(v)      a list of all other cases in which, during the previous 4 years, I testified as an expert at trial or by deposition; and

(vi)     a statement of the compensation to be paid for my study and testimony in the case.

3.      My opinions, the basis and reasons for my opinions, and the materials that I considered in formulating my opinions are set forth in this report. My qualifications are set forth below and in my current C.V. attached as **Exhibit 1** (the "CV"). Additionally, attached hereto as **Exhibit 2** is an illustrative list of companies I have been involved with in the hospitality industry. The publications I have authored in the last 10 years and the cases in which I have testified in court or by deposition or have delivered expert reports in the last 4 years are set forth in the CV. A copy of the engagement letter setting forth the compensation to be paid for my study and testimony is attached as **Exhibit 3**.

4.      I am currently the Head of Special Situations Investment Banking and Restructuring Advisory for Armory Securities, LLC. ("Armory"), a middle market investment bank with operations in Los Angeles, New York, Boston, Chicago and Dallas

5.      Before my current position at Armory, I held similar positions at The Seaport Group, LLC and Oppenheimer & Co. Inc., both national middle market investment banks.

6.      I am an expert in placing and structuring debt financing in distressed situations. As evidenced by the CV, I have been involved in raising special situations debt and equity capital since 1997. I have been involved in raising billions of dollars in this segment over the course of my career. Special situations capital is primarily capital for companies in financial or operational distress, companies operating within industries that are cyclical or disfavored due to a wide variety of external factors, or companies involved in bankruptcy proceedings.

7.      I have substantial experience with hospitality assets (primarily with a gaming component), where I have been involved in numerous debt and equity capital raises, mergers and acquisitions and also restructurings. As noted above, attached hereto as **Exhibit 2** is an

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Estimation Opposition.

illustrative list of companies I have been involved with in this industry segment.   However, I frequently raise capital across a wide range of industry sectors, frequently including ones that are operating in financial or operational distress or in sectors that are distressed.

8.    In Q4 of 2020, Armory was the sole placement agent for approximately $875 million of financing.  My team and I at Armory have received multiple industry awards for our work in raising capital in special situations.  We were honored by M&A Advisor with the 2019 Refinancing of the Year in the $100 million – $1 billion category.  In 2018, Armory received an award for Equity Financing of the Year award from M&A Advisor.  This was the third consecutive year that Armory was honored with an award by the M&A Advisor.

9.    Armory is a registered broker dealer and regulated by FINRA and the SEC.  I have numerous securities licenses, as listed in my CV.

10.    In connection with this Report, I have generally reviewed the bankruptcy case docket related to the Chapter 11 Cases and the San Jose hotel property at issue therein (the "Property"), including the following documents: the Amended and Restated Hotel Management Agreement dated as of December 2, 2005 (as further amended, modified, and/or restated, and together with any annexes, exhibits, and ancillary agreements, the "HMA") [Dkt. No 11, Ex. D]; the Owner Agreement between SC SCJ Holdings, LLC, FMT SJ LLC and Fairmont Hotel & Resorts (U.S.) Inc. dated January 2, 2018 [Dkt. No. 11, Ex. E]; the *Declaration of Neil Demchick in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 11]; *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Lender; and (III) Granting Related Relief* [Dkt. No. 172]; *Declaration of Thomas Morone in Opposition to Fairmont's Motion to (I) Modify the Automatic Stay to Permit Arbitration of Disputes; and (II) Enforce Arbitration Clause Compelling Arbitration of Disputes* [Dkt. No. 111]; *Debtors' Motion for an Order Authorizing Marketing Process to Solicit Hotel Brands* [Dkt. No. 41]; *Morone Declaration in Support of Debtors' Motion for an Order Authorizing Marketing Process to Solicit Hotel Brands* [Dkt. No. 42]; *Declaration of Sam Hirbod in Support of Debtors' Motion for an Order Authorizing Marketing Process to Solicit Hotel Brands* [Dkt. No. 43]; *Order on Debtors' Motion for an Order Authorizing Marketing Process to Solicit Hotel Brands* [Dkt. No. 159]; the transcripts from the "second day hearing" conducted on April 6, 2021 [Dkt. No. 178] (the "April 6 Hearing Transcript") and April 7, 2021 [Dkt. No. 184] (the "April 7 Hearing Transcript"); and the *Disclosure Statement with Respect to Amended Joint Chapter 11 Plan of Reorganization* (the "Amended Disclosure Statement") [Dkt. No. 296].  I have also reviewed a redline of proposed amendments to the Amended Disclosure Statement that the Debtors sent to Accor's counsel on May 16, 2021.

11.    Based on my review of these materials, I understand that Accor asserts an unliquidated claim against both Debtors arising from alleged breach of the HMA.

12.    In my experience, lenders regularly lend into situations where there are contingent claims or where the amount of a claim or multiple claims has not been determined or adjudicated.  To protect against the final determination of such claims having an impact on a newly made credit or loan, lenders will typically make sure they are either (i) senior in priority (typically being secured with senior liens) or (ii) structurally senior, meaning they are at a more

senior level in the corporate structure than the unresolved claims (for example, loaning to the entity with the operating assets as opposed to a holding entity where the claims reside).

13.     For example, it is not atypical for new capital referred to as "mezzanine" capital to come in as second lien debt or even as "last out financing" first lien debt, meaning that the mezzanine capital comes in under the first lien credit agreement, but there are contractual intercreditor provisions negotiated with the first lien lender governing priority and respective rights and remedies.  Since secured lenders are typically senior to unsecured claims, these structures provide lenders the comfort they need to make an investment without having all contingent claims fixed.

14.     In another example, it is also not atypical for an operating company and holding company structure to be utilized to own an asset, with the contingent claims residing at the holding company and the mezzanine debt being loaned to the operating company.  This structure alleviates lender concerns because the debt being raised is structurally senior to the junior claims.

15.     In addition, it is not unusual for a company seeking to affect a restructuring to seek to negotiate with its unsecured creditors regarding the priority treatment of any claims that might affect the ability to implement a plan of reorganization.  To my knowledge, the Debtors have not made a proposal to Accor to seek to negotiate a resolution of the Accor claim that would accommodate the proposed mezzanine financing.

16.     Lastly, sometimes lenders will make loans to companies with contingent claims without being either senior secured or structurally senior, where such loan is given priority to such contingent claims by contract or by court order.  While this structure is less common, it was in fact utilized in these Chapter 11 Cases.  The contingent claims have not been resolved and new financing was provided to the Debtors without the financing being senior secured, but rather with a court order specifying that the new financing was a superpriority administrative expense claim, making it senior to the other unsecured claims and the contingent or unliquidated claims.

17.     There are a number of structures that can be utilized to alleviate lender concerns without adjudicating or fixing unliquidated claims.   As explained herein, Loans can be structured in a variety of ways such that when the unliquidated claim is resolved, it will not have an impact on the lender or the credit.

18.     It is my opinion, in agreement with Mr. Morone's testimony, that he can successfully market the Property and get offers regardless of Accor's unliquidated claim and the fact that Accor's claim is unliquidated is not a barrier to a properly-conducted marketing process. (*See* Apr. 7 Hr'g Tr. at 19:7-8.  Mr. Morone testifies that he "can market the heck out of this thing.")

19.     Furthermore, based on my review of relevant documents and years of experience as detailed herein, it is my opinion that, assuming the underwriting of the investment on the Property supports $45 million in mezzanine financing, there are a number of commercially reasonable structures that can be employed by a lender which eliminate the need for Accor's HMA claim to be liquidated.

20.    I am further of the opinion that the fact that Accor's claim is unliquidated in and of itself should not be a barrier to the closing of a mezzanine loan or other structured financing if structured appropriately.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), I hereby submit the above report.

_____
Name:  Eben Perison
Date:    May 19, 2021

**<u>Exhibit 1</u>**

Eben Paul Perison
Senior Managing Director
Head of Special Situations Investment Banking & Restructuring Group
**Armory Securities, LLC**

Professional History

- **Armory Securities, LLC**                                         2014 – Present
  *Senior Managing Director, Head of Special Situations Investment Banking & Restructuring Advisory*
  Mr. Perison is a Senior Managing Director and Head of the Special Situations Investment Banking &
  Restructuring Group for Armory Securities, LLC, an independently owned middle market investment
  bank with operations in Los Angeles, New York, Boston, Chicago and Dallas.  The Armory team has
  been recognized by its peers and lauded by winning the 2019 Refinancing of the Year in the $100
  million – $1 billion category.  In 2018, Armory received an award for Equity Financing of the Year
  from M&A Advisor.  This was Armory's third consecutive year of being honored with an award by the
  M&A Advisor. The Armory team has been engaged by not only by a diverse array of distressed
  companies and debtors, but also by some of the nation's largest financial institutions, banks and
  commercial lenders.

- **The Seaport Group, LLC**                                         2011 – 2014
  *Managing Director,  Head of Special Situations Investment Banking & Restructuring Advisory*
  Responsible for building and overseeing the restructuring and special situations investment banking
  business at Seaport, a mid-sized national investment bank.  The team was recognized by its peers
  by winning the M&A Advisor award in 2013.  In September of 2014, spun entire restructuring and
  special situations team out of Seaport and formed Armory.

- **Oppenheimer & Co. Inc.**                                         2008 – 2011
  *Managing Director, Head of Special Situations Investment Banking & Restructuring Advisory*
  Responsible for building and overseeing the restructuring and special situations investment banking
  business at Oppenheimer, a mid-sized national investment bank.

- **Fortress Investment Group**                                      2006 – 2007
  *Managing Director,  Drawbridge Special Opportunities Fund*
  Responsible for originating, negotiating and structuring a broad range of alternative debt investments,
  including senior secured debt, mezzanine debt and second lien debt.

- **Libra Securities, LLC**                                          2002 – 2006
  *Managing Director, Co-Head of Investment Banking*
  Responsible for the corporate finance department which completed numerous sole-managed debt
  and equity private placements, as well as numerous co-managed deals.

- **U.S. Bancorp Libra/Libra Investments, Inc.**                     1997 – 2002
  *Managing Director/Senior Vice President*
  As Managing Director for the investment banking division of U.S. Bancorp, structured, negotiated and
  closed over $2.5 billion of high yield, mezzanine, private equity and alternative financing transactions.
  Acted as co-head of Los Angeles corporate finance commencing 2000.  Also served in a number of
  key executive positions for investment bank with over $250 million of capital, including Member of

Commitment Committee and Risk Management Committee.  In January of 2002, was one of three partners to reacquire Libra from U.S. Bancorp., the fifth largest U.S. Bank.

- **Gibson, Dunn & Crutcher LLP**,                                      1994 – 1997
  Corporate & Restructuring Attorney

- **Baker & McKenzie**                                                          1993 – 1994
  Corporate & Restructuring Attorney

- **Milbank, Tweed, Hadley & McCloy**                                1990 – 1993
  Corporate & Restructuring Attorney

- **U.S. Bankruptcy Court**                                                            1990
  Honorable Samuel Bufford, Judicial Intern

Education:

- **University of California, Hastings College of Law**
  Juris Doctorate *Cum Laude* 1990
  Honors:  Order of the Coif; Thurston Honors Society

- **University of California, Irvine**
  Bachelor of Arts in Economics *Magna Cum Laude* 1987
  Honors:  Phi Beta Kapa; Order of Omega

Prior Testimony or Reports:

Cases in which Mr. Perison has testified in court or by deposition or has delivered expert reports

- In re EB HOLDINGS II, INC., Case No. BK-S-19-16364-ABL (Bankr. D. Nev.) (advisor to Debtor)
- In re LENSAR, INC., Case No. 1612808 (MFW) (Bankr. D. Del) (advisor to the Debtor)
- In re Quantum Fuel Systems Technologies Worldwide, Inc. d/b/a Quantum Technologies, Case No. 8:16-BK-11202-MW (Bankr. C.D. Cal.) (advisor to the debtor)
- In re Louisiana Riverboat Gaming P'ship, Case No. 12-12013 (SVC) (Bankr. W.D. La.) (advisor to debtor)
- In re Station Casinos, Inc., Case No. 09-52477 (GWZ) (Bankr. D. Nev.) (advisor to Green Valley subsidiary)
- In re Station Casinos, Inc., Case No. 09-52477 (GWZ) (Bankr. D. Nev.) (advisor to Aliante debtor subsidiary)
- In re Louisiana Riverboat Gaming P'ship, Case No. 08-10824 (SVC) (Bankr. W.D. La.) (advisor to debtor)

Licenses:
- California State Bar
- FINRA Licenses:
  Series 7 – General Securities Registered Representative
  Series 9 - General Securities Sales Supervisor
  Series 10 - General Securities Sales Supervisor

Series 24 – General Securities Principal
Series 27 – Financial and Operations Principal
Series 63 – Uniform Securities Agent State Law

Memberships:

- TMA, ABI, California State Bar

Lectures:

- Past speaker at ABI and AIRA conferences

**Exhibit 2**

**Hospitality/Gaming Transactions**

| Company / Property | Location of Assets | # of Hotel Rooms |
|---|---|---|
| Ocean Casino Resort | Atlantic City, NJ | 1,399 |
| SLS Hotel & Casino Las Vegas | Las Vegas, NV | 1,616 |
| Red Rock Resorts, Inc. | Las Vegas, NV | |
| Boulder Station Hotel and Casino | Las Vegas, NV | 300 |
| Texas Station Hotel and Casino | Las Vegas, NV | 200 |
| REVEL | Atlantic City, NJ | 1,399 |
| Eldorado Resorts, LLC | | |
| Eldorado Hotel and Casino | Reno, NV | 814 |
| Eldorado Resort Casino Shreveport | Shreveport, LA | 403 |
| Silver Legacy Resort Casino | Reno, NV | 1,711 |
| Mountaineer Casino, Racetrack & Resort | Chester, WV | 354 |
| Legends Gaming, LLC | | |
| DiamondJacks Bossier City | Bossier City, LA | 571 |
| DiamondJacks Vicksburg | Vicksburg, MS | 122 |
| Confidential Reno Asset | Reno, NV | 1,531 |
| Silver Legacy Resort Casino | Reno, NV | 1,711 |
| Chukchansi Gold Resort & Casino | Coarsegold, CA | 402 |
| Green Valley Ranch Resort Spa and Casino | Henderson, NV | 495 |
| Aliante Station Casino & Hotel | Las Vegas, NV | 202 |
| Odawa Casino Resort | Petoskey, MI | 137 |
| Harlow's Casino Resort & Hotel | Greenville, MS | 105 |
| Planet Hollywood Resort & Casino Las Vegas | Las Vegas, NV | 2,567 |

**Exhibit 3**

# ARMORY

Armory Securities, LLC
1230 Rosecrans Avenue, Suite 660
Manhattan Beach, CA 90266
Tel: (310) 798-7777
Fax: (310) 798-6277

*April 21, 2021*

PERSONAL AND CONFIDENTIAL

Sam Newman, Esq.
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA 90013

Dear Mr. Newman:

This letter agreement (this "***Agreement***") confirms the terms under which Sidley Austin LLP ("***Counsel***") has engaged Armory Securities ("***Armory***") on behalf of Accor Management US Inc. (the "***Company***"), the successor to Fairmont Hotels & Resorts (U.S.) Inc. ("***Fairmont***") under that certain Amended and Restated Hotel Management Agreement, dated as of December 2, 2005 (the "***HMA***"), to assist Counsel in providing advice to the Company and to provide expert testimony in connection with the bankruptcy (the "***Bankruptcy***") filed by SC SJ Holdings LLC ("***SC SJ***") and FMT SJ LLC ("***FMT SJ***," and together with SC SJ, the "***Debtors***") and with respect to such other financial matters as to which Counsel on behalf of the Company and Armory Securities may agree in writing during the term of this engagement.  Debtor SC SJ is the owner of an 805-room luxury hotel located at 170 South Market Street, San Jose, California, in the heart of Silicon Valley (the "***Hotel***").  Prior to FMT SJ's bankruptcy petition date, FMT SJ leased the Hotel from SC SJ pursuant to a lease agreement, dated as of January 2, 2018.  Pursuant to the HMA, the Company provided certain management services for the Hotel on the terms contained therein.

For purposes hereof, the term "Company" includes affiliates of the Company and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company.  If appropriate in connection with performing its services hereunder, Armory Securities may utilize the services of one or more of its affiliates, in which case references herein to Armory Securities shall include such affiliates.

***1. Services.***  Armory is being retained as a testifying expert and financial advisor to provide services to Counsel on behalf of the Company, including the following:

    ***a.***    ***General Expert Testimony Services***.  Armory will, to the extent requested by Counsel:

    i.    provide testimony by affidavit or declaration, deposition, and live or recorded testimony with respect to the matters upon which Armory has provided advice;

    ii.    coordinate with Counsel with respect to providing such testimony in connection with any hearing or trial in the Bankruptcy or related proceedings;

    iii.    prepare written reports with respect to the matters upon which Armory has provided advice, as necessary or required; and

    iv.    provide expert testimony on such other matters as Counsel and Armory shall agree.

ACCOR_0000194

**ARMORY**

*b.*     *General Financial Advisory Services*.  Armory will, to the extent requested by Counsel:

i.     familiarize itself with the business, industry, operations, properties, financial condition and prospects of the Debtors, the Hotel and to the extent requested, the Debtors' affiliates;

ii.    review the Debtors' liquidity outlook, debt service capacity and appropriate capital structure;

iii.   assist Counsel in conducting a customary business and financial analysis of the Debtors, including, but not limited to, with respect to its business plans, financial projections, operating results and cash flow position; and

iv.    assist Counsel in identifying, reviewing and evaluating, any proposed Restructuring (including any amendment, modification or waiver of the terms of the HMA or analysis of the terms of the HMA), and if directed by Counsel, developing and evaluating alternatives for a Restructuring.

*c.*     *Restructuring Services*.  If a Restructuring is pursued by or for the Debtors, Armory will, to the extent requested by Counsel:

i.     advise and assist Counsel in structuring and effecting the financial aspects of such a Restructuring;

ii.    provide financial advice and assistance to Counsel in developing and seeking approval of a plan (as the same may be modified from time to time, a "***Plan***") under title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "***Bankruptcy Code***") or otherwise;

iii.    provide financial advice and assistance to Counsel regarding any amendments or modifications to HMA or any new management agreement or treatment of claims thereunder pursuant to the Plan; and

iv.    assist Counsel and participate in negotiations with entities or groups affected by the Plan.

For purposes of this Agreement, the term "Restructuring" shall mean any recapitalization or restructuring including, without limitation, through any material modification or amendment to the terms, conditions or covenants of the Debtor's equity or debt securities or contractual agreements or claims, including the HMA, other indebtedness, obligations or liabilities, pursuant to a Plan or a solicitation of consents, waivers, acceptances or authorizations, or otherwise.

*d.*     *Sale and Financing Analysis Services*.  Armory will, to the extent requested by Counsel, assist Counsel in analyzing, and evaluating any Sale and Financing alternatives that may be pursued by or for the Debtors in the Bankruptcy, which will include:

i.     assisting Counsel in evaluating any Sale of the Debtor or the Hotel or any Financing thereof in the Bankruptcy;

ii.    provide financial advice and assistance to Counsel in evaluating timing and process for any Sale or Financing to maximize recovery for the Company;

iii.    if requested by Counsel, provide financial advice and assistance to Counsel

2

**ARMORY**

               regarding any Sale or Financing and impact thereof on the Company and the HMA and claims thereunder; and

iv.      if requested by Counsel, assist Counsel and participate in negotiations with entities or groups affected by the Sale or Financing.

"Sale" shall mean any sale of the Debtors' business, assets or ownership interest in connection with the Bankruptcy, which shall include the disposition to one or more third parties in one or a series of related transactions of the equity securities of the Debtors or all or a significant portion of the assets (including the assignment of any executory contracts) or businesses of Debtors or their subsidiaries, in either case, including through a sale or exchange of capital stock or assets, a lease of assets, a merger, consolidation or other business combination, an exchange, Plan, recapitalization, formation of a joint venture, partnership or similar entity or any similar transaction.

"Financing" shall mean any equity or debt financing transactions for the Debtors proposed in connection with the Bankruptcy, which shall include the sales and/or issuances of (i) one or more classes or series of equity securities or structured equity, and/or (ii) debt securities or other indebtedness, including, without limitation, any secured, unsecured, senior, mezzanine or subordinated debt securities, including debt securities with warrants attached thereto, and/or any secured, unsecured senior or subordinated loan, credit facility (including new loans under an existing credit facility) or other debt financing.

Counsel and Company acknowledge and agree that Armory is not, and does not hold itself out to be, an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. Counsel and Company shall consult with their own advisors concerning such matters and shall be responsible for making their own independent investigation and appraisal of the risks, benefits and suitability of the transactions contemplated by this Agreement, and Armory shall have no responsibility or liability to Company, or Counsel with respect thereto.

Notwithstanding anything contained in this Agreement to the contrary, Armory makes no representations or warranties about the Company's ability to successfully complete any Restructuring or Plan or other transaction contemplated hereby. Unless otherwise agreed to by the parties in writing, Counsel agrees that Armory shall not have any obligation or responsibility to provide accounting, audit, or "crisis management" or business consultant services and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

    ***2. Compensation.*** Armory Securities' compensation for services rendered under this Agreement will consist of the following fees:

a.      Armory Securities shall be paid on a monthly basis for hourly fees for the services rendered hereunder under this Agreement and will range from $300 to $795 per hour, depending on the personnel assigned to the particular task, and shall be based on the hours actually expended by Armory Securities personnel, multiplied by their applicable hourly billing rate for this engagement.

        • Managing Director        $795 / hour

3

**ARMORY**

- Director                     $650 / hour
- Vice President        $525 / hour
- Associate                 $400 / hour
- Analyst                     $300 / hour

The hourly fees shall be billed and paid on a monthly basis.

b.  In the event that Company requests Armory Securities to provide any investment banking related services to the Company in connection with the Bankruptcy or Restructuring, including raising any debt or equity financing for the Company to facilitate any Plan, then the Company and Armory Securities shall negotiate such mandate on mutually acceptable terms in a separate engagement agreement.

In addition to any fees payable by the Company to Armory Securities hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Armory Securities on a monthly basis for its travel (if approved in advance) and other reasonable, documented out-of-pocket expenses (including all reasonable fees, disbursements and other charges of counsel to be retained by Armory Securities) incurred in connection with, or arising out of Armory Securities' activities under or contemplated by this engagement.  The Company shall also reimburse Armory Securities, at such times as Armory Securities shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement.  Such reimbursements shall be made promptly upon submission by Armory Securities of statements for such expenses.

*3.  Term.*  This Agreement may be terminated upon either Armory Securities' written request with thirty (30) days' notice or by the Company's or Counsel's written request with thirty (30) days' notice.  A termination or completion of a Restructuring or other transaction will not affect the exculpation, indemnification and contribution of the Company, the right of Armory Securities to receive any fees described in Section 2 of this Agreement, the right of Armory Securities to receive reimbursement for its out-of-pocket expenses, the non-disclosure obligations of the Company, or the arbitration guidelines.  The period of time from the date of the Agreement until the date on which the Agreement is terminated pursuant to the preceding sentence is referred to herein as the "Term".

*4.  Indemnification.*  The Company agrees to indemnify Armory Securities and certain other entities and persons as set forth in Schedule A attached hereto and incorporated by reference into this agreement.

*5.  Use of Information.*  The Company will furnish (or will use commercially reasonable efforts to cause other potential parties to a Transaction to furnish) to Armory Securities such information as is in the possession of the Company that Armory Securities requests for purposes of performing services under this Agreement (the "*Information*").  The Company recognizes and confirms that Armory Securities assumes no responsibility for the accuracy and completeness of the Information (including information available from generally recognized public sources) and will be using and relying on the Information (and information available from generally recognized public sources) without assuming responsibility for independent verification or independent

4

ACCOR_0000197

**ARMORY**

evaluation of any of the assets or liabilities (contingent or otherwise) of the Debtors.

      **_6.  Independent Contractor._** The Company acknowledges that Armory Securities has been retained solely to provide the services set forth in this Agreement. The Company acknowledges that in performing its services, Armory Securities shall act as an independent contractor, and not as a fiduciary, agent or otherwise, and any duties of Armory Securities arising out of its engagements hereunder shall be owed solely to the Company and Armory Securities shall have no duties or liabilities to, any equity holder of the Company or any third party in connection with its engagement hereunder, all of which are expressly waived. No one other than Counsel and the Company is authorized to rely upon the engagement of Armory Securities hereunder or any statements, advice, opinions or conduct by Armory Securities.

      **_7.  Confidentiality._** The Company acknowledges that any service, arrangement, proposal, information or advice provided by Armory Securities to Counsel and the Company in connection with this engagement is for the confidential use of Counsel and the senior management of the Company and, except as may be compelled in a judicial or administrative proceeding or as otherwise required by law or requested by a governmental authority, may not be disclosed or referred to publicly or to any third party without Armory Securities' prior written consent, which consent will not be unreasonably withheld.

      Armory Securities acknowledges that Armory Securities may not disclose or refer to any confidential information provided by Counsel or the Company to Armory Securities to any third party without the Company's and Counsel's prior written consent, which consent will not be unreasonably withheld, except to the extent, and only to the extent, that such information is required to be disclosed by law, court order, subpoena, self-regulatory organization, government agency or regulatory body with jurisdiction over Armory Securities, provided that (and without breaching any legal or regulatory requirement), Armory Securities shall give prompt notice in writing of the existence, terms and circumstances of any such requirement prior to making any such disclosure and that Armory Securities provide reasonable opportunity and assistance to Counsel and the Company in any attempt by Counsel or the Company to prevent or limit such disclosure. In the absence of a protective order or other remedy or the receipt of a waiver by Counsel or the Company, Armory Securities shall exercise its best efforts to preserve the confidentiality of such information. Armory Securities further acknowledges that any confidential information provided by the Company, including any notes or analyses derived therefrom, is solely for the purpose of evaluating the transactions contemplated in this Agreement.

      **_8.  Other Relationships._** Armory or its respective affiliates may from time to time perform various investment banking and financial advisory services for, and have other relationships with, other clients and customers who may have conflicting interests with respect to Counsel, the Company or the Restructuring. Notwithstanding the foregoing, Armory agrees that it has not been formally engaged to provide services to any party in connection with the matter contemplated in this Agreement which would result in a conflict of interest with Counsel or the Company with respect to the engagement described in this Agreement.

      **_9.  Compensation – Payment of Fees and Expenses._**

ACCOR_0000198

**ARMORY**

a. Company shall pay Armory Securities fees for services as set forth in this Agreement within 30 days of receipt of an invoice, subject to the terms of this Agreement. Armory Securities shall furnish a copy of each invoice to Counsel for review by Counsel and Company prior to Armory Securities' delivery of such invoice for payment in accordance with the prior sentence. Armory Securities agrees to provide Company and Counsel with a detailed invoice and a summary statement thereof. Armory Securities authorizes Counsel to furnish each such summary statement to the Company for payment from time to time.

b. Company shall also pay Armory Securities for all reasonable, documented costs and expenses incurred in connection with the services provided pursuant to this Agreement subject to the terms of this Section and the other terms of this Agreement. Armory Securities will bill for reasonable direct expenses incurred on Counsel's behalf during this engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as travel (if approved in advance), accommodations and other expenses specifically related to this engagement. All direct expenses will be billed at actual costs.

c. Armory Securities, Company, and Counsel each understands, acknowledges, and agrees that, notwithstanding anything to the contrary in this Agreement or otherwise, (i) the payment of any and all fees, expenses and other obligations incurred under or in connection with this Agreement or this engagement are solely the responsibility of Company and that in no event shall Counsel or any of its partners, principals, or members be liable in any capacity for, or have any obligation relating to, any of Armory Securities' invoices, fees, expenses, costs, damages or other liabilities under this Agreement or otherwise in connection with this engagement and (ii) in no event shall Counsel be liable or obligated in any manner to Company for any act or omission of any kind of Armory Securities or its Personnel in connection with, or relating to, this Agreement, any Authorization, or the engagement contemplated herein.

**_10. Preparation of and Rights to Work Product._** Armory Securities will not prepare written reports, memoranda or status summaries intended for external distribution except as directed by Counsel. All external written reports, memoranda, analyses, status summaries and any other written communications shall contain a legend that identifies them as confidential and protected by applicable legal privilege (e.g., "PRIVILEGED AND CONFIDENTIAL; ATTORNEY-CLIENT WORK PRODUCT") and will be directed to Counsel. If access to any of the materials in our possession relating to the engagement contemplated by this Agreement is sought, through formal discovery or otherwise, we will promptly notify the Company in writing (with a copy to Counsel), tender to the Company our defense responding to such request, and cooperate with Company and its counsel regarding our response thereto.

Counsel has and shall retain exclusive rights to ownership of all work product hereunder. Work product shall include any cash flow forecasts and reports issued pursuant to this Agreement, but shall exclude, among other things, all working papers by Armory Securities, memoranda, correspondence, notes, and calculations that Armory Securities may have prepared or used in the development of reports. Armory Securities shall have the right to retain copies of reports issued to Counsel for Armory Securities' records. Subject to Counsel's consent in writing,

ACCOR_0000199

# ARMORY

Armory Securities shall have the right to designate in writing certain work product as belonging to Armory Securities prior to the creation of such work product, and such designated work product shall be the exclusive property of Armory Securities if Counsel permits such work product created by Armory Securities. Armory Securities will consider all work performed in respect of this engagement to be confidential to Counsel, protected by attorney-client privilege and by the attorney work product doctrine.

**11. *Miscellaneous.*** This Agreement contains the entire agreement between the Counsel, the Company and Armory Securities concerning the subject matter hereof, and no modifications of this agreement or waiver of the terms and conditions hereof will be binding upon either party, unless approved in writing by all parties. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware. Counsel and the Company irrevocably and unconditionally submits to the exclusive jurisdiction of any State or Federal court sitting in Delaware over any action, suit or proceeding arising out of or relating to this Agreement. The Company irrevocably and unconditionally waives any objection to the laying of venue of any such action, suit or proceeding brought in any such court and any claim that any such action, suit or proceeding has been brought in an inconvenient forum.

Each of Armory Securities and the Company (on its own behalf and, to the extent permitted by law, on behalf of its shareholders) waives any right to trial by jury in any action, suit or proceeding arising out of or relating to this Agreement.

At any time after the consummation of a Restructuring, Armory Securities may, with the approval of the Company (not to be unreasonably withheld), place announcements or references in marketing materials describing its services hereunder (at Armory Securities' option and expense).

Please confirm that the foregoing is in accordance with your understandings and agreements with Armory Securities by signing and returning to us the duplicate of this letter enclosed herewith.

**[Signature page follows]**

ACCOR_0000200

# ARMORY

Very truly yours,

ARMORY SECURITIES, LLC

By:_____
Name: *Eben Perison*
Title: *Managing Director*

CONFIRMED AND AGREED:

SIDLEY AUSTIN LLP
Counsel to Accor Management US Inc.

_____
Name:  *Sam Newman*

CONFIRMED AND AGREED:

ACCOR MANAGEMENT US INC.

_____
Name: *Barbara Kilner*
Title:  *Senior Vice President, General Counsel*
       *North & Central America*

8

ACCOR_0000201

**ARMORY**

## SCHEDULE A

The Company agrees to indemnify and hold harmless Armory Securities and its affiliates and their respective former and present directors, officers, employees, agents and controlling persons (each such person, including Armory Securities, an "***Indemnified Party***") to the fullest extent permitted by law from and against any losses, claims, damages and liabilities, joint or several (individually and collectively, the "***Damages***"), to which such Indemnified Party becomes subject in connection with or arising from any transaction contemplated by this Agreement or the engagement of or performance of services by an Indemnified Party thereunder and will reimburse each Indemnified Party for all fees and expenses (including the reasonable fees and expenses of counsel) (individually and collectively, "***Expenses***") reasonably incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (individually and collectively, the "***Proceedings***") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceedings and in enforcing this Agreement; provided, that the Company will not be liable to any such Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, or bad faith of the Indemnified Party seeking indemnification hereunder. The Company also agrees that no Indemnified Party will have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of the Company arising out of or in connection with any transactions contemplated by this Agreement or the engagement of or performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, or bad faith of the Indemnified Party.

If for any reason other than in accordance with this Agreement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, then the Company will contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to the Company and/or its stockholders on the one hand, and Armory Securities on the other hand, in connection with the matters covered by this Agreement or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well as any relevant equitable considerations. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any alleged conduct relates to information provided by the Company or other conduct by the Company (or its employees or other agents) on the one hand, or by Armory Securities, on the other hand.

The Company agrees not to enter into any waiver, release or settlement of any Proceedings (whether or not Armory Securities or any other Indemnified Party is a formal party to such Proceedings) in respect of which indemnification may be sought hereunder without the prior written consent of Armory Securities (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of each applicable Indemnified Party from all liability arising out of such Proceedings and (ii) does not contain any factual or legal admission or assumption of fault by or with respect to any Indemnified Party or

ARMORY

any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

The indemnity, reimbursement and contribution obligations of the Company hereunder will be in addition to any liability which the Company may otherwise have to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party.  The provisions of this Schedule A will survive the modification or termination of this Agreement.

ACCOR_0000203