## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SC SJ HOLDINGS LLC, *et al.*[1] | Case No. 21-10549 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**: TBD |

## DEBTORS' OBJECTION TO PROOFS OF CLAIM OF ACCOR MANAGEMENT US INC. (F/K/A FAIRMONT HOTELS AND RESORTS (U.S.) INC.)

PILLSBURY WINTHROP SHAW
PITTMAN LLP
Patrick Potter (Admitted *Pro Hac Vice*)
Robert Wallan (Admitted *Pro Hac Vice*)
Dania Slim (Admitted *Pro Hac Vice*)
Rahman Connelly (Admitted *Pro Hac Vice*)
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8928
Facsimile: (202) 663-8007

COLE SCHOTZ P.C.
Justin Alberto (No. 5126)
Patrick Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Counsel to the Debtors and*
*Debtors in Possession*

*Counsel to the Debtors and*
*Debtors in Possession*

June 30, 2021

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: SC SJ Holdings LLC (5141) and FMT SJ LLC (7200). The mailing address for both Debtors is 3223 Crow Canyon Road, Suite 300 San Ramon, CA 94583.

## **Table of Contents**

I.   INTRODUCTION ........................................................................................................ 1

II.  JURISDICTION ......................................................................................................... 4

III.BACKGROUND ......................................................................................................... 4

    A.  **The Hotel's Prepetition Operations** .................................................................. 4

    B.  **Closure of the Hotel and Termination of the HMA** ......................................... 5

    C.  **Fairmont's Violation of the Automatic Stay and Failure to Turnover Estate Property to the Debtors** ................................................................................... 6

    D.  **The Fairmont Proofs of Claim** ......................................................................... 7

        1.  **The Contingent Indemnity and Reimbursement Claims** ....................................... 8

        2.  **The Legal Fee Claims** ......................................................................................... 8

        3.  **The Management Fee Claim** ................................................................................ 9

        4.  **The Fixed Employee Indemnity and Reimbursement Claims** ........................... 10

IV.RELIEF REQUESTED ............................................................................................. 11

V.  BASES FOR RELIEF REQUESTED ...................................................................... 11

    A.  **The Fairmont Proofs of Claim Should be Disallowed in Full Pending Fairmont's Turn Over of the Debtors' Books and Records** ............................................... 11

    B.  **The Contingent Indemnity and Reimbursement Claims Should be Disallowed** ....... 12

        1.  **The Contingent Indemnity and Reimbursement Claims are Barred by Section 502(e)(1)(B) of the Bankruptcy Code** ................................................................. 12

        2.  **The Contingent Indemnity and Reimbursement Claims Are Also Barred by Section 502(e)(1)(A) to the Extent That They Seek Reimbursement for Claims That Are Subject to Disallowance** ....................................................................... 14

    C.  **The Legal Fee Claims Should be Disallowed Because They Are Not Supported by** *Prima Facie* **Evidence and Are Unenforceable Against the Debtors** ........................ 14

        1.  **The Legal Fee Claims Are Not Supported by Adequate Evidence** ...................... 15

        2.  **The Debtors Do Not Believe that the Legal Fee Claims Are Enforceable Against Them** ................................................................................................................... 17

    D.  **The Management Fee Claim Should be Disallowed** ......................................... 18

    E.  **Fairmont's $10,162.05 Claim for Reimbursement Related to Alleged Employee 401(k) Matching Obligations is Not Enforceable Against the Debtors' Estates** ....... 19

VI.RESERVATION OF RIGHTS .................................................................................. 20

VII.   NOTICE .............................................................................................................. 21

The above-captioned debtors (the "Debtors"), by and through their undersigned counsel, hereby seek entry of an order, substantially in the form attached hereto as Exhibit A, disallowing proofs of claim numbers 138 and 140 (the "Fairmont Proofs of Claim") filed by Accor Management US Inc. (f/k/a Fairmont Hotels and Resources (U.S.) Inc.) ("Fairmont") to the extent set forth herein, pursuant to 11 U.S.C. § 502 and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure.  In support of the objection, the Debtors respectfully state as follows:

## I.    **INTRODUCTION**

1.      The Court should disallow the Fairmont Proofs of Claim in their entirety under section 502(d) of the Bankruptcy Code because Fairmont is in possession of estate property, including books and records belonging to Debtor FMT, "recoverable under section 542" of the Bankruptcy Code.  The Debtors have initiated a turnover action against Fairmont.  *See SC SJ Holdings LLC v. Accor Management US Inc., f/k/a Fairmont Hotel & Resorts (U.S.) Inc.*, Adv. Pro. 21-50992 (JTD), Dkt. 1 (Bankr. D. Del.) (the "Adversary Proceeding").  Fairmont's claims accordingly must be disallowed unless and until the action is resolved and Fairmont turns over all estate property.

2.      Fairmont's claims are also subject to disallowance on other grounds.  Fairmont asserts approximately $3,004,397.11 of indemnity and reimbursement claims for alleged employee obligations.  Fairmont's indemnity and reimbursement claims are wholly contingent and should thus be disallowed under section 502(e)(1)(B) of the Bankruptcy Code.  *See* 11 U.S.C. § 502(e)(1)(B) ("[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.").  Many of the alleged employee obligations

also appear to be invalid or grossly overstated.  The Debtors reserve the right to object to any other proofs of claim that are based on those alleged obligations.

3.      Fairmont also asserts a claim for indemnification of approximately $390,000 of legal fees incurred by its counsel, Sidley Austin LLP, that has no basis in the Debtors' books and records.  Fairmont's proofs of claim include no factual information about the nature of the legal services for which reimbursement is sought or why indemnification is warranted under section 18.1 of the HMA (as defined below), as Fairmont baldly asserts.  In fact, Fairmont seeks reimbursement of legal fees incurred through April 30th, almost two months after the HMA was terminated.  During that period, Sidley Austin represented Fairmont in full scale litigation against the Debtors.  The information provided in Fairmont's proofs of claim is not sufficient to constitute *prima facie* evidence of the amount and validity of the legal fee claims, and the surrounding circumstances suggest that those claims are invalid.  The Debtors believe that information developed in discovery will confirm that Fairmont's Legal Fee Claims do not fall within the scope of section 18.1 of the HMA and are thus not enforceable against the Debtors.

4.      For the same reason, Fairmont's claim for $2,029,200.50 of alleged management fees and expense reimbursement should be disallowed in whole or in part.  Fairmont has not provided invoices or adequate descriptions for the expenses for which it seeks reimbursement or explained which sections, if any, of the HMA entitle it to reimbursement.  Rather, it appends a schedule of purported invoice summaries that, in some cases, include nothing but a dollar amount (with no accompanying description).  The limited information in Fairmont's proofs of claim is insufficient to constitute *prima facie* evidence of the validity and amount of these expenses.  Moreover, in many cases, the information provided by Fairmont suggests that the expenses for

2

which reimbursement is sought do not fall within the scope of the HMA and are thus not enforceable against the Debtors.

5.      Fairmont also fails to provide any supporting information for its reimbursement claim for a $10,162.95 payment that it asserts it made on April 2, 2021 to satisfy an alleged 401(k) matching obligation of Debtor FMT.  Fairmont does not identify the employees that were allegedly entitled to the matching 401(k) contributions, the events triggering the alleged obligation of Debtor FMT to make the matching contributions, or provide any other information that would allow Debtor FMT to assess the alleged claim on its merits.  Notably, however, the Hotel was temporarily closed beginning on March 5th and, as of April 2nd, was staffed with only four employees.  Those four employees received an aggregate payroll of $20,000 for the April 2nd pay period and are not the source of any alleged 401(k) matching obligation.  Simply put, there was no payroll activity during the relevant time period that could possibly have triggered an obligation on the part of Debtor FMT to make a matching 401(k) contribution.  Fairmont's reimbursement claim should thus be disallowed.

6.      Finally, any claims that may be otherwise allowed against the Debtors are subject to setoff, recoupment, and similar rights.  The Debtors have and/or will assert in the Adversary Proceeding and, as counterclaims in the pending AAA arbitration (the "Arbitration"), claims for damages against Fairmont arising from its mismanagement of the Hotel and related misconduct. The claims include, among other things (and without limitation), misappropriation, conversion, embezzlement, and gross and other negligent care of the Hotel.  The Debtors will have setoff and recoupment rights with respect to any damages awarded on those counterclaims and believe that when (a) the Adversary Proceeding, (b) Arbitration and (c) this objection conclude, the Debtors' awarded claims against Fairmont will exceed Fairmont's awarded claims (if any) against the

3

Debtors and their estates.  The Debtors accordingly submit that none of the claims asserted in Fairmont's proofs of claim can be allowed until these proceedings, and any others commenced by the Debtors against Fairmont, are fully concluded.

7.      The Debtors anticipate that discovery will uncover additional bases to object to the Fairmont Proofs of Claim.  The Debtors accordingly reserve the right to amend or supplement this objection to assert additional objections to Fairmont's proofs of claim.

## II.    **JURISDICTION**

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

9.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicates for the relief sought herein are section 502 of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Bankruptcy Rule 3007-1.

## III.    **BACKGROUND**

### A.    **The Hotel's Prepetition Operations**

11.     Debtor SC SJ is the owner of real estate generally comprised of an 805-room luxury convention/group-style hotel (the "Hotel") located in San Jose, California. Prior to chapter 11, Debtor FMT leased the Hotel from Debtor SC SJ pursuant to that certain lease agreement, dated as of January 2, 2018 (the "Lease").

12.     Prior to bankruptcy, the Hotel was managed by Fairmont pursuant to that certain Amended and Restated Hotel Management Agreement, dated as of December 2, 2005 (as amended, supplemented, or otherwise modified from time to time, the "HMA").  Debtor FMT is a signatory to the HMA and is referred to as the "Owner" thereunder.  While Debtor SC SJ, the Hotel's actual owner, is not a signatory to the HMA, it is obligated to perform certain duties under

4

the HMA pursuant to that certain Owner Agreement, dated as of January 2, 2018, between the Debtors and Fairmont (the "Owner Agreement").

### B.      Closure of the Hotel and Termination of the HMA

13.      Prior to bankruptcy, the Hotel derived the bulk of its revenue from conventions, conferences, business retreats, and social gatherings.  The scheduling of those events came to an abrupt halt following the spread of the COVID-19 pandemic.  The Hotel's business suffered dramatically as a result. Average occupancy between March 2020 and March 2021 was approximately 7.7%.  The Hotel's losses for 2020 exceeded $18.6 million, and as of March 2021, losses for 2021 were projected to exceed $18.8 million.  The losses substantially exhausted the Debtors' available cash resources.

14.      The Debtors spent the first several months of the pandemic pursuing various strategies to raise liquidity (including by seeking new financing from Fairmont), but those efforts were largely unsuccessful.  The Debtors' efforts are detailed in the *Declaration of Neil Demchick in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 11] (the "First Day Declaration").

15.      In an effort to curb the losses, the Debtors elected to temporarily close the Hotel on March 5th, shortly prior to the bankruptcy filing.  As detailed in the First Day Declaration, a key part of the Debtors' bankruptcy strategy is to transition from Fairmont to a new hotel operator that will put the Hotel in the best position to succeed upon reopening.[2]  Accordingly, in conjunction with the closure of the Hotel, the Debtors also terminated the HMA with Fairmont.  The details surrounding termination of the HMA are set forth in the *Debtors' Memorandum of Points and*

---

[2]  On May 24, 2021, the Debtors selected a Prevailing Manager to manage the Hotel upon its emergence from bankruptcy.

*Authorities in Support of Debtors' Motion to Estimate Maximum Amount of Fairmont Hotel &*

*Resorts (U.S.) Inc.'s Contingent and Unliquidated Claim* [Docket No. 226].

16.     Debtor FMT also elected to terminate its Lease for the Hotel pursuant to that certain

Lease Termination and Surrender Agreement, dated as of March 5, 2021.  As detailed in the First

Day Declaration, Debtor FMT made that determination because it had no reasonable ability to pay

post-petition rent under the Lease and wished to reduce administrative expenses.

17.     Debtor FMT filed its chapter 11 petition in this Court on March 5, 2021 (the "<u>FMT</u>

<u>Petition Date</u>").  Debtor SC SJ filed its chapter 11 petition five days later, on March 10, 2021 (the

"<u>SC SJ Petition Date</u>").  The cases have been administratively consolidated.

**C.     Fairmont's Violation of the Automatic Stay and Failure to Turnover Estate
        Property to the Debtors**

18.     The books and records relating to the Hotel, including books and records generated

or maintained by Fairmont while it managed the Hotel, are the Debtors' property, as set forth in

section 8.2 of the HMA.  Following a termination or deemed termination of the HMA, Fairmont

is obligated under section 16.5 of the HMA to "transfer to [FMT] all of [FMT's] books and records

respecting the Hotel in the custody and control of [Fairmont] . . . ."  *See* HMA § 16.5(c).  Fairmont

is also obligated to provide the Debtors with "a copy of all data and information related to the

Operation of the Hotel during the 12 months immediately preceding the Termination Date or Early

Termination Date, as applicable . . . ."  *See* HMA § 16.5(e).

19.     Approximately a half hour after Debtor FMT filed its bankruptcy petition, Fairmont

terminated Debtor FMT's access to the web-based portal on which Debtor FMT's books and

records were stored, thereby preventing Debtor FMT from accessing its books and records.  To

date, Fairmont has also failed to turn over all of Debtor FMT's books and records in an alternate

format.  Those books and records constitute property of Debtor FMT's bankruptcy estate.  The

Debtors accordingly intend to commence a turnover action pursuant to section 542 of the Bankruptcy Code in short order.

20.    Fairmont's conduct also amounted to a willful violation of the automatic stay. Specifically, Fairmont's termination of Debtor FMT's access to its books and records was an act to exercise control over property of the estate.  The Debtors intend to assert claims for damages arising from Fairmont's willful stay violation.

D.    **The Fairmont Proofs of Claim**

21.    On May 7, 2021, Fairmont filed substantially identical proofs of claim (claim nos. 138 and 140) against both Debtors asserting general unsecured claims totaling $35,568,647.58. Fairmont asserts that each of its claims arise under the HMA and the Owner Agreement.

22.    Fairmont's claims can be placed into five categories:

i.    <u>Contingent Indemnity and Reimbursement Claims</u> – Contingent claims for reimbursement and indemnification of certain alleged liabilities of the Debtors for which Fairmont believes it may be co-liable;

ii.    <u>Legal Fee Claims</u> – Fixed claims for reimbursement and indemnification of amounts that Fairmont owes to its legal counsel, Sidley Austin LLP;

iii.    <u>Management Fees Claim</u> – Fixed claims for outstanding management fees and reimbursable expenses allegedly due under the HMA;

iv.    <u>Fixed Employee Indemnity and Reimbursement Claims</u> – Fixed claims for reimbursement and indemnification for amounts that Fairmont allegedly paid on account of certain employee-related obligations; and

v.    <u>Termination Damages Claim</u> – A claim for damages arising from the Debtors' termination of the HMA and related claims for an alleged breach of the implied covenant of good faith and fair dealing and an alleged breach of the covenant of quiet enjoyment.

23.    The Termination Damages Claim is subject to the Debtors' estimation motion [Docket No. 71] and is thus not addressed at length herein.  The Debtors reserve all rights with

respect to the Termination Damages Claim, including the right to amend this objection or file a new objection with respect to the Termination Damages Claim.

### 1.    The Contingent Indemnity and Reimbursement Claims

24.    Fairmont asserts two categories of Contingent Indemnity and Reimbursement Claims: (a) $2,586,945.56 that Fairmont "believes that FMT owes" to certain Hotel staff "on account of various severance obligations" including alleged severance claims, alleged claims for continuation of health coverage, and alleged vacation and sick leave claims; and (b) $417,451.55 that Fairmont "believes that FMT owes" on account of "various nonqualified deferred compensation plans and arrangements." *See* Proof of Claim No. 140 at 3; Proof of Claim No. 138 (same).

25.    Fairmont asserts, in its proofs of claim, that it "does not hereby admit to any liability with respect to [the Contingent Indemnity and Reimbursement Claims]," but alleges that certain former Hotel employees have argued that Fairmont may be responsible for such claims. Fairmont contends that to the extent it is found to be liable to the third-party claimants, it "is entitled to indemnification under section 16.6 of the HMA and/or reimbursement . . . under section 5.2 of the HMA." *See* Proof of Claim No. 140 at 3; Proof of Claim No. 138 (same).

### 2.    The Legal Fee Claims

26.    Fairmont asserts that it is entitled to approximately $390,000 of legal fees incurred by its legal counsel, Sidley Austin LLP.  It alleges that $85,619.24 of the fees were incurred between July 2020 and September 2020 "in connection with a potential prepetition transaction" related to the Hotel and that indemnity is warranted under section 18.1 of the HMA.  Fairmont provides no further detail regarding the nature of the alleged transaction, how the alleged transaction relates to the HMA, or why its work on the alleged transaction entitles it to

8

indemnification under section 18.1 of the HMA, which provides indemnity for certain losses incurred by Fairmont "in the performance of its obligations under this Agreement."

27.     Fairmont states that another $304,476.25 of legal fees were incurred "[i]n connection with the closure of the Hotel" and "postpetition performance of [Fairmont's] obligations under the HMA" (even though the Debtors terminated the HMA prior to the FMT Petition Date).  The proofs of claim indicate that Sidley Austin incurred the fees for services rendered through April 30, 2021 but provide no detail regarding the services provided.  Notably, however, during the relevant period, Sidley Austin represented Fairmont in a variety of litigation against the Debtors.  It represented Fairmont in commencing an arbitration proceeding against the Debtors, moving to lift the automatic stay in connection with the arbitration [Docket Nos. 92, 93, 94, 129, 130, 132], objecting to the Debtors' estimation motion [Docket Nos. 107, 230, 231, 232, 233, 234, 235, 236, 237], objecting to the Debtors' disclosure statement [Docket No. 211], and serving extensive discovery on the Debtors [*see e.g.*, Docket Nos. 195, 197, 198, 202, 203].

28.     The Fairmont Proofs of Claim assert that the nature of the legal fees for which reimbursement is sought is "set forth in greater detail in the invoices attached" as Exhibit G-1 and Exhibit G-2 to the Fairmont Proofs of Claim.  The appended Sidley Austin invoices include nothing other than the invoiced amount and the month in which the legal services were provided to Fairmont.  The invoices indicate that the details regarding the professional services provided are "shown on the attached exhibits," but no such exhibits are appended to the Fairmont Proofs of Claim.  *See* Proof of Claim 138, Exs. G-1, G-2; Proof of Claim 140 (same).  On information and belief, Fairmont deliberately excluded the exhibits.

### 3.     The Management Fee Claim

29.     Management fees were payable on a monthly basis under the HMA and were calculated as a percentage of total revenues.  The Debtors were also responsible for reimbursing

Fairmont for certain "Operating Expenses" it incurred in connecting with the management of the Hotel. Fairmont contends that it has an unsecured claim against the Debtors for outstanding management fees and reimbursable expenses in the aggregate amount of no less than $2,029,200.50.

30.     In support of the Management Fee Claim, Fairmont attaches a schedule of invoices with dates and summary descriptions. The summary descriptions often use what appear to be internal Fairmont acronyms that do not mean anything to the Debtors. And, in some cases, the schedule includes no description at all.

31.     The Debtors requested, but never received, backup (*e.g.*, the actual invoices) from Fairmont. On March 25th, the Debtors' counsel, wrote to Chad Hummel and Sam Newman, counsel to Fairmont, asking them to "please provide . . . the backup you looked at (or that otherwise exists) for [Fairmont's alleged Management Fee Claim." After receiving no response, the Debtors' counsel repeated the request during a meet and confer with Fairmont's counsel held on March 26th and again in an email dated March 28th. Mr. Newman responded: "We have received your request and are looking into it." On the following day, Mr. Newman email Debtors' counsel again, asserting that Fairmont would not be providing the backup. He wrote: "[R]egarding the statements about Fairmont's claim, we do not expect to provide any further documentation relating to the fee issue at this time."

32.     The Debtors accordingly have not been provided with the information they need to assess the validity and amount of the alleged Management Fee Claim.

### 4.     The Fixed Employee Indemnity and Reimbursement Claims

33.     The Fairmont Proofs of Claim assert three Fixed Employee Indemnity and Reimbursement Claims: (a) an alleged $10,162.95 payment to Empower (f/k/a MassMutual), Debtor FMT's 401K vendor for employee 401K contributions; (b) an alleged $126,106.53

payment to Zurich, the workers' compensation provider for the Hotel; and (c) a $8,685 payment that Fairmont allegedly made to Debtor FMT's employment practices liability provider.

## IV.   RELIEF REQUESTED

34.     The Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, disallowing and expunging the Fairmont Proofs of Claim to the extent set forth herein.

## V.   BASES FOR RELIEF REQUESTED

### A.     The Fairmont Proofs of Claim Should be Disallowed in Full Pending Fairmont's Turn Over of the Debtors' Books and Records

35.     The Debtors have filed a complaint in the Adversary Proceeding asserting, among other things, a turnover count against Fairmont pursuant to section 542 of the Bankruptcy Code. On information and belief, Fairmont is in possession of, but has not turned over, vital books and records related to the Hotel that are property of Debtor FMT.  Section 502(d) of the Bankruptcy Code provides that "the court shall disallow any claim of any entity from which property is recoverable under section 542 . . . of this title, unless such entity . . . has . . . turned over any such property."  11 U.S.C. § 502(d).  Thus, the Fairmont Proofs of Claim should be disallowed in full unless and until Fairmont turns over all the Debtors' books and records.

36.     The Debtors' complaint also includes a count against Fairmont for willful violation of the automatic stay for its improper exercise of control over property of the estates.  *See* 11 U.S.C. § 362(a)(3) (the filing of a bankruptcy petition operates as a stay of "any act to . . . exercise control over property of the estate").  The Debtors submit that any damages owed by Fairmont can be set off against any claims of Fairmont that are allowed.

37.     The Debtors also intend to assert counterclaims against Fairmont in the Arbitration seeking millions of dollars of damages for, among other things (and without limitation),

misappropriation, conversion, embezzlement, and gross and other negligent care of the Hotel.  The

Debtors are entitled to set off and recoupment rights with respect to any damages awarded on those

counterclaims and believe that when Arbitration concludes, their claims against Fairmont will

exceed Fairmont's claims against the estates.  The Debtors thus submit that none of the claims

asserted in Fairmont's proofs of claim can or should be allowed until these proceedings and other

commenced by the Debtors against Fairmont are fully concluded.

### B.    The Contingent Indemnity and Reimbursement Claims Should be Disallowed

### 1.    The Contingent Indemnity and Reimbursement Claims are Barred by Section 502(e)(1)(B) of the Bankruptcy Code

38.    The Contingent Indemnity and Reimbursement Claims should be disallowed under

section 502(e)(1)(B) of the Bankruptcy Code.  Section 502(e)(1)(B) provides that the court "shall

disallow any claim for *reimbursement or contribution* of an *entity that is liable with the debtor* on

or has secured the claim of a creditor, to the extent that such claim for reimbursement or

contribution is *contingent as of the time of allowance or disallowance* of such claim for

reimbursement or contribution." 11 U.S.C § 502(e)(1)(B) (emphasis added).  Each of the statutory

elements are present here.

39.    By the Contingent Indemnity and Reimbursement Claims, Fairmont seeks

reimbursement or contribution within the meaning of section 502(e)(1)(B).  *See* Proof of Claim

No. 140, at 4 ("[T]o the extent that [the Debtors' alleged] Employee Severance Obligations result

in a claim against Accor, Accor is entitled to indemnification under section 16.6 of the HMA

and/or reimbursement"); *see id.* (asserting that "to the extent" the Debtors' alleged obligations "on

account of various nonqualified deferred compensation plans and arrangements" eventually "result

in a claim against Accor, Accor is entitled to indemnification under section 16.6 of the HMA

and/or reimbursement"); *see* Proof of Claim 138 (same).    "[I]indemnification claims are

disallowable under section 502(e)(1)(B) because they are functionally the same as claims for reimbursement or contribution." *See In re Caribbean Petroleum Corp.*, No. 10-12553 KG, 2012 WL 1899322, at *8 (Bankr. D. Del. May 24, 2012), *aff'd*, 566 F. App'x 169 (3d Cir. 2014).

40.    The Fairmont Proofs of Claim also establish the co-liability element of section 502(e)(1)(B).  Fairmont asserts, in its proofs of claim, that it "does not hereby admit to any [ ] liability" for the Contingent Indemnity and Reimbursement Claims, but it seeks reimbursement or indemnification to the extent that it is found to be liable.  The Debtors also do not admit that they are liable for the alleged Contingent Indemnity and Reimbursement Claims.  But "[c]o-liability under section 502(e)(1)(B) is a broad concept that includes "'all situations wherein indemnitors or contributors *could be* liable with the debtor.'"  *See Caribbean Petroleum*, 2012 WL 1899322, at *3 (citations omitted).  Fairmont's assertion of reimbursement and indemnification claims is necessarily predicated on purported co-liability with the Debtors.  *See In re Drexel Burnham Lambert Grp., Inc.,* 146 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) ("By its nature a claim for contribution presupposes a sharing of liability and thus a codebtor relationship.").

41.    Finally, the Contingent Indemnity and Reimbursement Claims are contingent.  By its own admission, Fairmont has not paid such claims and disputes that it is liable for them.  "A claim [for reimbursement or contribution] is contingent until the claimant has both incurred liability and made payment on that liability."  *See Caribbean Petroleum*, 2012 WL 1899322, at *3; *In re APCO Liquidating Tr.*, 370 B.R. 625, 636 (Bankr. D. Del. 2007) ("The law is clear that "[t]he contingency contemplated by [section] 502(e)(1)(B) relates to both payment and liability") (citations omitted).

42.    The Contingent and Indemnity and Reimbursement Claims satisfy each of the elements of section 502(e)(1)(B) of the Bankruptcy Code and should be denied on that basis.

2. **The Contingent Indemnity and Reimbursement Claims Are Also Barred by Section 502(e)(1)(A) to the Extent That They Seek Reimbursement for Claims That Are Subject to Disallowance**

43.     By the Contingent Indemnity and Reimbursement Claims, Fairmont seeks reimbursement or indemnification for alleged third-party claims that Fairmont believes may be assertable against Fairmont and the Debtors.  Fairmont does not identify the alleged third-party creditors by name or indicate whether or not those third-parties have filed proofs of claim or otherwise taken steps to assert the alleged claims against the Debtors' estates.  Fairmont does not even assert that the claims are valid.  It merely says that the claims reflect what Fairmont "believes that FMT owes."

44.     The Debtors reserve all rights to object to the alleged third-party creditor claims on both procedural and substantive grounds at the appropriate time.  To the extent that such claims are disallowed, Fairmont's claims for reimbursement and indemnification must also be disallowed.  *See* 11 U.S.C. § 502(e)(1)(A) (the court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such creditor's claim against the estate is disallowed").

45.     Among other grounds for objection, the Debtors believe that many of the alleged third-party creditors have not filed proofs of claim even though the general bar date expired on May 12, 2021.  If the third-party creditor claims are disallowed because they were not timely filed, Fairmont's indemnity and reimbursement claims must also be disallowed.  *See In re APCO Liquidating Tr.*, 370 B.R. 625, 635 n. 8 (Bankr. D. Del. 2007) ("If this Court were to disallow the claim of [the third-party creditor] on grounds of lateness or otherwise, then the [claim of the party seeking reimbursement] would likewise be disallowed.").

C.     **The Legal Fee Claims Should be Disallowed Because They Are Not Supported by *Prima Facie* Evidence and Are Unenforceable Against the Debtors**

14

### 1. The Legal Fee Claims Are Not Supported by Adequate Evidence

46.     Fairmont's Legal Fee Claims should be disallowed because the Fairmont Proofs of Claim do not constitute *prima facie* evidence of the validity and amount of those claims.

47.     In order for a proof of claim to constitute *prima facie* evidence of the validity and amount of a claim, as set forth in Bankruptcy Rule 3001(f), it must (a) attaching the supporting documentation required by Bankruptcy Rule 3001(c) and the Official Form and "allege facts sufficient to support a legal liability to the claimant." *See In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992) (internal citations omitted).  When a proof of claim does not satisfy that standard, the claimant fails to meet its "initial obligation to go forward," and the claim should be disallowed.  *See also In re Kirkland*, 572 F.3d 838, 841 (10th Cir. 2009) (allowing a claim that lacks "supporting evidence or an explanation for [the creditor's] failure to provide supporting evidence" would improperly force the debtor "to disprove an unsubstantiated claim"); *accord In re Jimenez*, 487 B.R. 543, 546 (Bankr. D. Colo. 2013).

48.     The Fairmont Proofs of Claim fail to include adequate factual allegations.  Fairmont asserts that $85,619.24 of the legal fees were incurred "[i]n connection with a potential prepetition transaction relating to the [Hotel]," but that allegation is insufficient to trigger indemnification under section 18.1 of the HMA.  Section 18.1 provides for indemnification of Fairmont for legal fees incurred "in the performance of its obligations under this Agreement."  *See* HMA 18.1.  The Fairmont Proofs of Claim do not say anything about the alleged "potential prepetition transaction" and do not include any allegation that Fairmont incurred the legal fees in connection with its duties under the HMA.  The Fairmont Proofs of Claim accordingly do not "set forth all the facts necessary to establish the claim."  *Cf Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

49.     Fairmont does allege that the other $304,476.25 of legal fees were incurred "in connection with the postpetition performance of [Fairmont's] obligations under the HMA," but

15

that assertion is wholly conclusory and is unsupported by any information regarding the alleged HMA obligations or the legal services provided.  Moreover, the Fairmont Proofs of Claim indicate that the legal services were provided through April 30, 2021, which is after the date on which the HMA was terminated.[3]  Fairmont could not have incurred fees arising from "performance of its obligations under the HMA" after the HMA—and Fairmont's contractual duties thereunder—were terminated.  *Cf. Holm*, 931 F.2d at 623 (allegations in a proof of claim "prima facie establish the claim" only if they "are not self-contradictory").

50.     Fairmont's proofs of claim are also inadequate because the supporting documentation is inadequate.  Bankruptcy Rule 3001(a) provides that a proof of claim must comply with the Official Form, and Official Form 410 requires a proof of claim must "[a]ttach redacted copies of any documents that support the claim, such as . . . invoices" or explain the failure to do so.  Fairmont submitted the cover pages to Sidley Austin's invoices as Exhibits G-1 and G-2 to its proofs of claim.  The cover pages indicate that the invoices are "[f]or professional services rendered . . . as shown on the attached exhibits," but Fairmont omitted those exhibits from its proofs of claim.  Fairmont provides no explanation for that omission.  Fairmont's claim thus fails to comply with Bankruptcy Rule 3001(a) or Official Form 410.

51.     Prior to termination of the HMA, Fairmont was an "insider" of the Debtors because it operated their business and property.[4]  It also controlled the Debtors' books and records under

---

[3]  The Debtors assert that the HMA was terminated in early March.  Fairmont disputes that date but concedes that the HMA was terminated by no later than April 5th – more than three weeks prior to April 30th.  *See Accor Management (U.S.) Inc.'s Additional Supplemental Opposition to the Debtors' Motion to Estimate Maximum Amount of Accor's Claim* [Docket No. 412], at 15-16 (listing April 5th as the "Breach Termination Date").

[4]  *See* 11 U.S.C. § 101(31) (the term "insider" includes an "affiliate"); 11 U.S.C. § 101(2) (the term "affiliate" includes an "entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement").  In light of Fairmont's insider status, to the extent that discovery yields evidence that Fairmont's fees or requests for expense reimbursement were not reasonable, Fairmont's claim may be subject to disallowance under section 502(b)(4) of the Bankruptcy Code as well.  *See* 11 U.S.C. § 502(b)(4) (court shall disallow a claim "for

16

the HMA and accordingly has a significant informational advantage.  Courts and commentators have admonished against treating sparsely documented proofs of claim as *prima facie* valid in these circumstances:

> *To treat a claim lacking necessary support as prima facie valid can lead to abuses of the claim process.* For instance, where an insider files a claim without the requisite support, a virtually insurmountable burden would be placed on a trustee seeking to object to the claim, since the claimant and debtor agree that the claim is valid and the trustee has no evidence available to meet his burden of proof.

*See In re All-American Auxiliary Ass'n*, 95 B.R. 540, 545 (Bankr. S.D. Ohio 1989) (quoting 12 Norton Bankruptcy Law Adviser, pp. 12-13 (Callaghan & Co. 1988)); *accord In re Circle J Dairy, Inc.*, 112 B.R. 297, 300 (W.D. Ark. 1989).

52.    Fairmont should be treated no differently.  Its Legal Fee Claims should be disallowed in full.

### 2.    The Debtors Do Not Believe that the Legal Fee Claims Are Enforceable Against Them

53.    Fairmont asserts that its Legal Fee Claims can be asserted against the Debtors by virtue of section 18.1 of the HMA, which provides that the Debtors "shall indemnify and hold [Fairmont] . . . harmless" from certain costs and expenses incurred by Fairmont "in the performance of its obligations under [the HMA] or otherwise in connection with any obligation incurred."  The Debtors believe that, upon completion of discovery, it will be clear that Fairmont's Legal Fee Claims do not fall within the scope of section 18.1 of the HMA and that they are thus not enforceable against the Debtors.  *See* 11 U.S.C. § 502(b)(1) (court shall disallow a claim to the extent it is "unenforceable against the debtor and property of the debtor").  The Debtors accordingly reserve the right to supplement this objection with additional facts developed during discovery.

---

services of an insider or attorney of the debtor" to the extent that it "exceeds the reasonable value of such services"). The Debtors reserve the right to demonstrate that all or a portion of Fairmont's proofs of claim are subject to disallowance under section 502(b)(4).

**D.      The Management Fee Claim Should be Disallowed**

54.      The HMA entitles Fairmont to payment of a management fee and reimbursement of certain expenses.  The HMA does not give Fairmont *carte blanche* to seek reimbursement of any and every expense that it may incur in conducting its business operations.  Rather, the types of expense that are reimbursable are carefully enumerated in the HMA.  *See, e.g.*, HMA § 9.5 (defining "Operating Expenses").  Several of the items for which Fairmont seeks reimbursement do not fall within the scope of the HMA and should thus be disallowed.

55.      In support of the Management Fee Claim, Fairmont attaches a schedule of invoices with dates and summary descriptions, which are often written using internal Fairmont acronyms that mean nothing to the Debtors.  Many of the charges do not have a basis in the Debtors' books and records and are not supported by any assertion or other indication that they are the types of expenses that are subject to reimbursement under the HMA.  For example, Fairmont references eight alleged invoices for which a total of $33,000 is supposedly due but for which no description is provided:

| Doc number | Description | Invoice Date | Payment term | Original Amount | Net balance |
|---|---|---|---|---|---|
| 2020000001 | | 9-Jan-20 | 9-Jan-20 | 3,000.00 | 3,000.00 |
| 2020000016 | | 4-Feb-20 | 4-Feb-20 | 3,000.00 | 3,000.00 |
| 2020000032 | | 3-Mar-20 | 3-Mar-20 | 3,000.00 | 3,000.00 |
| 2020000042 | | 6-Apr-20 | 6-Apr-20 | 3,000.00 | 3,000.00 |
| 2020000062 | | 11-May-20 | 11-May-20 | 3,000.00 | 3,000.00 |
| 2020000078 | | 8-Jun-20 | 8-Jun-20 | 3,000.00 | 3,000.00 |
| 2020000081 | | 8-Jul-20 | 8-Jul-20 | 3,000.00 | 3,000.00 |
| 2020000089 | | 5-Aug-20 | 5-Aug-20 | 12,000.00 | 12,000.00 |

*See* Proof of Claim 138, Exh. D; Proof of Claim 140, Exh. D.

56.      There is no basis for the Court to conclude that these invoices are for charges for which Fairmont is entitled to reimbursement under the HMA.  To the contrary, based on the

18

information provided, it is no more likely that these are proper charges than it is that the invoices were sent to the Debtors in error and were actually intended for another Fairmont hotel.  Fairmont's claims for these amounts should thus be disallowed.  *Cf.  Holm*, 931 F.2d at 623.

57.     The Debtors believe that many additional examples of improper requests for expense reimbursement will be revealed through the discovery process.  The Debtors accordingly reserve the right to supplement this objection to identify additional expenses that are not subject to reimbursement under the HMA.

> **E.     Fairmont's $10,162.05 Claim for Reimbursement Related to Alleged Employee 401(k) Matching Obligations is Not Enforceable Against the Debtors' Estates**

58.     Fairmont alleged that Debtor FMT failed to make a $10,162.95 employee deferral and employer 401(k) match payment arising from the April 2, 2021 payroll and that Fairmont made the payment in Debtor FMT's stead.  Fairmont contends that it is entitled to indemnification under section 18.1 of the HMA or reimbursement under section 5.2 of the HMA.  Fairmont's claim is subject to disallowance under sections 502(b)(1) and 502(e)(1)(A) of the Bankruptcy Code.

59.     Fairmont does not attach sufficient information to its proof of claim to support the existence of the alleged 401(k) obligation.  Rather, Fairmont attaches only a small excerpt from a longer email thread in which a client service manager from Empower Retirement informs a Fairmont employee that "the last debit ACH for San Jose (payroll date 4/2/2021) in the amount of $10,162.95 bounced."  *See* Proof of Claim 138, Exh. D; Proof of Claim 140, Exh. D.  That email does not assert, let-alone establish, the basis for the alleged obligation, the identity of the employees to whom the obligation was allegedly owed, or that it is an obligation of Debtor FMT. The email does not even establish that Fairmont paid the alleged obligation.

60.     There is no basis for a $10,162.95 obligation due as of April 2nd in the Debtors' books and records.  Prior to the FMT Petition Date, Debtor FMT deducted certain 401(k)

19

contributions from the gross payroll of certain employees for remittance to the appropriate third-party 401(k) account in the ordinary course of business. In some instances, the employee may also have been entitled to a matching contribution from the Hotel. On information and belief, Debtor FMT's obligation to make a matching contribution arose only after the employee's contribution was made.

61.     Notwithstanding Debtor FMT's prepetition practices, the Hotel closed on March 5, 2021. Following the Hotel's closure, it remained staffed with approximately four employees (as well as a few independent contractors). The payroll for these employees for the relevant pay period totaled less than $20,000. Given that it comprises more than 50% of the aggregate payroll for those four employees, it is clear that the alleged $10,162.95 matching obligation does not relate to these employees. It is thus clear that there was no payroll activity during the relevant time period that could possibly have triggered an obligation on the part of Debtor FMT to make a matching 401(k) contribution.

62.     Because the underlying claimants do not appear to have an allowable claim against the Debtors for the 401(k) contributions, Fairmont, as an alleged "co-debtor" is not entitled to reimbursement for making those contributions. *See* 11 U.S.C. § 502(e)(1)(A) ("[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on . . . the claim of a creditor, to the extent that . . . such creditor's claim against the estate is disallowed").

## VI.     <u>RESERVATION OF RIGHTS</u>

63.     The Debtors reserve the right to (a) file and serve a reply to any response so that it is received by Fairmont's counsel no later than three days prior to the hearing on this objection; (b) seek an adjournment of the hearing on any responses to this objection; and (c) amend, modify or supplement this objection. Moreover, should the grounds of objection stated herein be

20

dismissed or overruled, the Debtors reserve the right to object to the Fairmont Proofs of Claim on any other grounds that the Debtors discover or elect to pursue.

64.     Notwithstanding anything contained in this objection or the attached exhibits, nothing herein shall be construed as a waiver of the Debtors' rights to (a) commence avoidance actions against Fairmont under the Bankruptcy Code, including under sections 547 and 548 of the Bankruptcy Code, against Fairmont, or (b) enforce the Debtors' rights of setoff against Fairmont relating to such avoidance actions or any other causes of action that are or may be asserted against Fairmont.

## VII.   **NOTICE**

65.     Notice of this objection has been given to (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to CLNC 2019-FL1 Funding, LLC; (d) counsel to FMT SJ Catering LLC; (e) counsel to Fairmont; and (f) all parties entitled to notice pursuant to Local Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

21

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A, disallowing the Fairmont Proofs of Claim to the extent set forth herein, and (b) grant such other and further relief as is just and proper.

Dated: June 30, 2021
      Wilmington, Delaware

COLE SCHOTZ P.C.

*/s/ Justin Alberto*
Justin Alberto (No. 5126)
Patrick Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP
Patrick Potter (admitted *pro hac vice*)
Robert Wallan (admitted *pro hac vice*)
Dania Slim (admitted *pro hac vice*)
Rahman Connelly (admitted *pro hac vice*)
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8928
Facsimile: (202) 663-8007
patrick.potter@pillsburylaw.com
robert.wallan@pillsburylaw.com
dania.slim@pillsburylaw.com
rahman.connelly@pillsburylaw.com

*Counsel to the Debtors and Debtors in Possession*