**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SC SJ HOLDINGS LLC, *et al.*[1] | Case No. 21-10549 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 524** |

**OBJECTION OF ACCOR MANAGEMENT US INC.
(F/K/A FAIRMONT HOTELS AND RESORTS (U.S.) INC.)
TO THE DEBTOR'S MOTION TO EXTEND EXCLUSIVITY PERIODS**

Accor Management US Inc. (f/k/a Fairmont Hotels and Resorts (U.S.) Inc.) ("Accor") hereby submits this objection (the "Objection") to the *Debtor's First Motion Pursuant to Bankruptcy Code Section 1121(d) for Order Extending Periods to File Chapter 11 Plan and Solicit Acceptances Thereof* [Docket. No. 524] (the "Exclusivity Motion")[2] filed by SC SJ Holdings LLC and FMT SJ LLC ("Debtor SC SJ" and "Debtor FMT" respectively, and collectively, the "Debtors"). In support of this Objection, Accor respectfully states as follows:

**PRELIMINARY STATEMENT**

The limited exclusivity provided by section 1121 of the Bankruptcy Code is intended to provide a debtor with an opportunity to propose a plan to restructure its debts without being impeded by other constituents' pursuit of their own agendas. Exclusivity is *not*, however, a tool for debtors to seek to keep equity in place while not paying creditors in full, avoiding a market test

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: SC SJ Holdings LLC (5141) and FMT SJ LLC (7200). The mailing address for both Debtors is 3223 Crow Canyon Road, Suite 300 San Ramon, CA 94583.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Exclusivity Motion.

28377276.1

of their plan and forcing upon Accor a result that is at odds with the Bankruptcy Code. The Supreme Court's ruling in *LaSalle Street* is clear that where existing equity is putting in new value to facilitate the restructuring and as a result keep its equity position, the value must be subject to a competitive process.[3] Here, Eagle Canyon Capital is seeking to put an unspecified (and perhaps completely illusory) contribution into these cases via the Eagle Canyon Equity Contribution[4] and the "Real Property Sales" referred to in the Second Amended Plan.[5]

In particular under the *Second Amended Joint Chapter 11 Plan of Reorganization*, Accor would be entitled to receive *only* proceeds were generated from the Real Property – regardless of what its ultimate allowed claim is determined to be – and the properties would only be placed on the market following the liquidation of the Accor claim – creating uncertainty of when the Property Sales would occur and when Accor would be paid. Accor will demonstrate at Confirmation that the value of these uncertain, contingent rights are less than the amount of Accor's claim (and certainly less than a present payment in case. Meanwhile, Eagle Canyon Capital would keep its equity position on account of the new value it contributed (both by means of the "Real Property

---

[3] The United States Supreme Court held in *Bank of America National Trust & Savings 148 Association v. 203 N. LaSalle Street Partnership*, 526 U.S. 434 (1999), that old equity holders were disqualified from participating in a "new value" plan over the objection of a senior class of impaired creditors where the opportunity to contribute new capital and receive ownership interests in the reorganized entity was given exclusively to old equity holders without a market test of alternatives.

[4] While the Debtors will likely argue that Accor has no interest in the issues raised by the funding of the plan through the Eagle Canyon Commitment Letter, the law is clear that any party in interest can be heard to raise issues with regard to the compliance of a plan with the Bankruptcy Code and the Court has an independent obligation to evaluate compliance with section 1129. *See* Bankruptcy Code § 1109(b); *See also In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3d. Cir. 2011)(defining "party in interest" as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding."); *In re Ion Media Networks, Inc.*, 419 B.R. 585, 598 (Bankr. S.D.N.Y. 2009)(recognizing that the Court has an independent obligation to review the Plan to make sure that it satisfies the standards for plan confirmation set forth in section 1129).

[5] *See Second Amended Joint Chapter 11 Plan of Reorganization*, Section 5.2(a) [Docket No. 546].

Sales" and the cash contributions made per the Eagle Canyon Commitment Letter). Supreme Court precedent is clear that such a plan must be subject to a market test. As such, the Debtors' motion to extend exclusivity should be denied and exclusivity should be immediately terminated.

Even without the filing of the Second Amended Plan, however, which as a deficient new value plan requires termination of exclusivity, Debtors have failed to demonstrate cause to extend their exclusive periods. On the contrary, Debtors have *not* made good faith progress on a plan but instead have attempted to use the plan process (coupled with their misguided estimation efforts) to deprive Accor of a full and fair adjudication and payment of its claim. Now, after an adverse estimation ruling, the Debtors have pivoted to an unconfirmable "death trap" plan in an effort to force Accor to accept a fraction of what it is rightly owed while allowing equity to remain in place.

The Debtors have taken every opportunity to manipulate the chapter 11 process to obtain advantage in their litigation with Accor and to avoid the obvious conclusion, embodied by the Court's Estimation Ruling (as defined below), that Debtors' insiders need to make provision to pay Accor what it is owed in full if they are going to retain their equity. All of these machinations over what is a simple case – a single, shuttered hotel building with under 200 proofs of claim filed – demonstrate that the Debtors have misused their exclusive period to file a chapter 11 plan and no extension is warranted.

**FACTUAL BACKGROUND**

1.  On March 5, 2021, Debtor FMT filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"). That afternoon, the Debtors inadvisably instructed Accor management to vacate the hotel property, located at 170 South Market Street, San

3

28377276.1

Jose, California (the "Hotel"), and shuttered the Hotel against Accor's advice. On March 10, 2021, SC Holdings also filed for chapter 11 protection in the Bankruptcy Court. The Debtors' cases (the "Chapter 11 Cases") are being jointly administered under Case No. 21-1054.

2. On March 10, 2021, the Debtors filed a motion seeking to reject the Hotel Management Agreement and Owner Agreement with Accor [Docket No. 22] (the "Rejection Motion"). The Rejection Motion was granted as to the Hotel Management Agreement on April 5, 2021 [Docket No. 152] with Accor's consent.

3. On March 11, 2021, the Debtors asked the Bankruptcy Court to approve procedures for soliciting and negotiating a new hotel management agreement with qualified hotel operators [Docket No. 41] (the "Procedures Motion"). The Bankruptcy Court entered an order granting the Procedures Motion on April 6, 2021 [Docket No. 159] (the "Procedures Order"). The Procedures Order approved procedures that prescribed, amongst other things, the timeline for the solicitation process, bid requirements and the deadline to submit bids. Accor consented to the entry of the Procedures Order and timely submitted a conforming bid in compliance with the Procedures Order.

4. On March 16, 2021, the Debtors filed the *Motion of Debtors for Order Under Bankruptcy Code Section 502(c) and Bankruptcy Rule 3018 Estimating Maximum Amount of Contingent and Unliquidated Claim of Fairmont Hotels & Resorts (U.S.) Inc.* [Docket No. 71] (the "Estimation Motion") seeking to estimate Accor's claim for all purposes.

5. On March 23, 2021, Accor filed that certain *Motion to (I) Modify the Automatic Stay to Permit Arbitration of Disputes; and (II) Enforce Arbitration Clause Compelling*

*Arbitration of Disputes* [Docket No. 92] ("Lift Stay Motion"), seeking relief from the automatic stay to allow Accor to pursue arbitration to liquidate its claim against the Debtors. Accor repeatedly offered to establish an expedited arbitration timeline to attempt to conform to the Debtors' aggressive plan process. The Debtors refused to consent, apparently because they felt the Bankruptcy Court would provide a more favorable forum. At his deposition, Mr. Hirbod testified that "I believe that the federal court will give me the best chance in order for me to see what is true and justice [*sic*] and how that [liquidated damages provision] should be, was intended to be, and ought to be implemented." Deposition of Sam Hirbod, June 3, 2021, Transcript at 76:16-20.

6. On April 7, 2021, the Court held a hearing during which it directed the parties to file supplemental briefs in response to the Estimation Motion. The parties filed their respective supplemental briefs on April 23, 2021 in advance of the April 29, 2021 hearing (the "April 29, 2021 Hearing") before the Court.

7. At the April 29, 2021 Hearing, the Court granted Accor's Lift Stay Motion and directed the parties to proceed with both arbitration and estimation. The Court set an evidentiary estimation hearing for June 10 and 11, 2021 (the "Estimation Hearing").

8. On May 24, 2021, despite the fact that the bid failed in many respects to comply with the Bid Procedures Order, the Debtors filed a notice on the Bankruptcy Court's docket announcing Signia Hotel Management LLC ("Hilton") as the prevailing operator and "Signia by Hilton" as the prevailing hotel brand.

28377276.1

9. On June 29, 2021, the Bankruptcy Court issued its ruling on the Estimation Motion (the "Estimation Ruling"), finding that "based on the evidence presented, it is reasonable to me that Accor may succeed in proving their claim for breach of the covenant of good faith and fair dealing and be entitled to breach damages" [Docket No. 545-1, Estimation Ruling Transcript, 20:21-24]. The Court estimated the value of Accor's breach claim at $22.24 million. [Docket No. 545-1, Estimation Ruling Transcript, 21:10-18].

10. On June 29, 2021, the Debtors filed the *Complaint for Injunctive and other Relief*, [Case No. 21-50992-JTD D.I. 1] (the "Adversary Complaint") commencing an adversary proceeding against Accor seeking, amongst other things, a declaration that Accor willfully violated the automatic stay and compelling Accor to restore the Debtors' access to Accor's computer systems.

11. On July 13, 2021, the Debtors filed (i) the *Debtors' Motion to Designate Accor Management US Inc. (f/k/a Fairmont Hotels & Resorts (U.S.) Inc.) Pursuant to 11 U.S.C. § 1126(e)* [Docket No. 544] (the "Motion to Designate"), and (ii) the *Debtors' Motion for Entry of an Order Approving the Solicitation of the Debtors Second Amended Joint Chapter 11 Plan of Reorganization for Class 4C and the Adequacy of the Supplemental Disclosure Therewith* [Docket No. 548] (the "Solicitation Motion"). The Motion to Designate was filed despite the fact that, at the time of filing, Accor was not entitled to vote under the as-filed plan. The Solicitation Motion now purports to give Accor four days to vote on the Second Amended Plan (defined below). As of the date hereof, the Disclosure Statement has not been amended to provide for any information regarding the Real Property purporting to provide for payment to Accor. The Debtors have not

28377276.1

provided Accor any information regarding these properties, their value or provisions being made to ensure any value available today will be available when the payment to Accor is due.

12. Later on July 13, 2021, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 546] (the "Second Amended Plan"), modifying the proposed treatment of Accor's claim. Specifically, Section 4.7 of the Second Amended Plan provides for three potential treatments:[6]

    i.    If Accor votes to accept the Plan, it shall receive $4,000,000 in Cash within thirty (30) days after the Effective Date in full and final satisfaction of any and all Allowed Fairmont General Unsecured Claims.

    ii.    If Accor does not vote to accept the Plan but section 1129(b) of the Bankruptcy Code nevertheless does not apply to Class 4C, Fairmont shall receive, in full and final satisfaction of any Allowed Fairmont General Unsecured Claim, Cash equal to the amount Accor is entitled to receive on account of such Allowed Fairmont General Unsecured Claims under section 1129(a)(7)(A)(ii) plus $50,000, which shall be paid in whole or in part from the Real Property Sale Proceeds.[7]

---

[6] Capitalized terms used but not defined in this section shall have the meaning proscribed in the Second Amended Plan.

[7] What the Debtors are really trying to do here is to prevent Accor from voting on and objecting to the Plan through their baseless Motion to Designate and then leave Accor with a $50,000 recovery. While the Debtors' egregious approach will not succeed, the result of this provision – unprecedented where equity remains in place – would be that the Hotel would need to be valued to determine Accor's recovery. By information and belief, after accounting for the secured debt, the current market value of the Hotel would show no equity value and Accor would be entitled to only $50,000 while equity remained and Mr. Hirbod obtained a windfall. *See* Liquidation Analysis attached as Exhibit 3 to the *Amended Disclosure Statement with Respect to Amended Joint Chapter 11 Plan of Reorganization* [Dkt. 391].

7

iii. If section 1129(b) of the Bankruptcy Code does apply to Class 4C, Accor shall receive payment in full in Cash of any Allowed Fairmont General Unsecured Claim plus interest on such outstanding Allowed Fairmont General Unsecured Claim (i) at the Federal judgment rate from the SC SJ Petition Date through the Effective Date, and (ii) at the Fairmont Post-Effective Date Interest Rate from the Effective Date until the Fairmont Payment Date, which shall be paid in whole or in part from the Real Property Sale Proceeds.

## ARGUMENT

13. Upon the request of a party in interest, a bankruptcy court may extend or shorten a debtor's plan exclusivity period for cause. 11 U.S.C. § 1121(d). The debtor in possession bears the burden of establishing "cause" for an extension of its exclusivity period. *See In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989); *see also In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Lake in the Woods*, 10 B.R. 338 (Bankr.E.D.Mich.1981); *In re Ravenna Industries, Inc.*, 20 B.R. 886 (Bankr. N.D. Ohio 1982).

**I.    The Debtors' Plan is a "New Value" Plan and Exclusivity Should be Terminated to Allow the Plan to be Market-Tested**

14. While the Debtors might not call the Second Amended Plan a new value plan, that is exactly what is – the Second Amended Plan allows Eagle Canyon Capital and Sam Hirbod (together "Existing Equity") to maintain their equity position by putting in additional assets (of a speculative value) to pay creditors.  Importantly, while the Second Amended Plan provides for three options to pay Accor's claim, none of the options ensures payment *in full*:

8

- If Accor votes to accept the Plan, it shall receive $4,000,000 in Cash within thirty (30) days after the Effective Date in full and final satisfaction of any and all Allowed Fairmont General Unsecured Claims.

- If Accor does not vote to accept the Plan but section 1129(b) of the Bankruptcy Code nevertheless does not apply to Class 4C, Accor shall receive, in full and final satisfaction of any Allowed Fairmont General Unsecured Claim, Cash equal to the amount Fairmont is entitled to receive on account of such Allowed Fairmont General Unsecured Claims under section 1129(a)(7)(A)(ii) plus $50,000, which shall be paid in whole or in part from the Real Property Sale Proceeds.

- If section 1129(b) of the Bankruptcy Code does apply to Class 4C, Accor shall receive payment in full in Cash of any Allowed Fairmont General Unsecured Claim plus interest on such outstanding Allowed Fairmont General Unsecured Claim (i) at the Federal judgment rate from the SC SJ Petition Date through the Effective Date, and (ii) at the Fairmont Post-Effective Date Interest Rate from the Effective Date until the Fairmont Payment Date, which shall be paid in whole or in part from the Real Property Sale Proceeds.

15. Clearly, option one – a $4,000,000 payment on Accor's claim of no less than $22.24 million as estimated by the Court (not including the additional amounts detailed in Accor's Proof of Claim for unpaid management fees and indemnification claims) – is *not* payment in full. However, the second and third options are likewise deficient because they limit Accor's claim to liquidation value or *whatever proceeds may be realized from the Real Property Sales* without any

9

regard to (let alone showing) that such payments will be sufficient to pay Accor in full. As such, the Second Amended Plan is a new value plan.

16. The case law is clear that a new value plan must be market-tested and on this basis it is appropriate for a court to terminate exclusivity. In other words, existing equity should not be able to maintain the *exclusive* right to contribute new capital, but rather the plan should be subject to a competitive process.

17. In *Bank of America Nat'l Trust and Savings Assoc. v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999), the United States Supreme Court ruled that a plan providing for equity holders to contribute new capital was not confirmable in the absence of competitive bidding for the equity interests to determine the adequacy of the new value contribution. 526 U.S. at 457–58. The United States Supreme Court held that the debtor's plan was doomed without an opportunity to compete or offer a competing plan. *See In re Situation Mgmt. Sys., Inc.*, 252 B.R. 859, 864 (Bankr. D. Mass. 2000) (discussing *LaSalle Street*, (526 U.S. at 458).

18. Relying on *LaSalle Street*, courts have held that filing a new value plan is sufficient cause to terminate the debtor's exclusive right to file a plan under 11 U.S.C. § 1121(d). *See In re Situation Mgmt. Sys., Inc.*, 252 B.R. 859, 866 (Bankr. D. Mass. 2000) (terminating the debtor's exclusivity period in order to allow the debtor's largest creditor to file a plan to compete with the debtor's new value plan); *H.G. Roebuck & Son, Inc. v. Alter Commc'ns, Inc.*, No. BR 10-18241, 2011 WL 2261483, at *8 (D. Md. June 3, 2011) (holding, in order to satisfy the absolute priority rule and the United States Supreme Court's mandate in *LaSalle Street*, that the Bankruptcy Court's

28377276.1

confirmation of the new value plan must be reversed and remanded with instructions to terminate exclusivity and to allow competing reorganization plans to be filed).[8]

19. In *In re Situation Management Systems, Inc.*, 252 B.R. 859 (Bankr.D.Mass.2000), the bankruptcy court considered a plan filed by the existing equity holders whereby they would retain the equity in the reorganized debtor. The bankruptcy court determined that the act of filing a new value plan was sufficient cause to terminate the old equity holders' exclusive right to file a reorganization plan under the Bankruptcy Code. *Id.* at 865; *see also H.G. Roebuck & Son, Inc. v. Alter Commc'ns, Inc.*, No. BR 10-18241, 2011 WL 2261483, at *9 (D. Md. June 3, 2011) ("The absolute priority rule mandates, and *LaSalle* clarifies, that when old equity seeks to retain its share in a reorganized debtor, the debtor must undergo market valuation. One way to satisfy that requirement is through the termination of exclusivity and by allowing competing reorganization plans to be filed.").

20. Here, Existing Equity is contributing the Eagle Canyon Commitment and the yet to be determined proceeds from the Real Property Sales to pay Accor's claim and, on that basis, keep its equity position. However, absent evidence that the Real Estate Sales will generate sufficient funds to pay Accor in full, the Second Amended Plan is *not* a full-payment plan but rather a new value plan which should be subject to market competition. In addition, the plan delays payment

---

[8] *See also* Markell, Bruce A. *Owners, Auctions, and Absolute Priority in Bankruptcy Reorganizations*, 44 Stan. L.Rev. 69, 118–119 (1991), *citations omitted* ("Automatic termination of exclusivity whenever owners propose a new value plan would equalize the parties' bargaining positions. If creditors can file a competing plan without incurring the cost of fighting exclusivity, they no longer need to deduct such cost from their bid to achieve their desired profit. Termination of exclusivity can thereby provide a potent check on owners' latitude with respect to the initial setting of reorganization value and plan structure."). *Accord*, Bowles, C.R. *The Sale of the Century or a Fraud on Creditors?: The Fiduciary Duty of Trustees and Debtors in Possession Relating to the "Sale" of a Debtor's Assets in Bankruptcy*, 28 U. Mem. L.Rev. 781, 844–845 (1998).

28377276.1

and fails to provide a market or contract rate of interest to compensate Accor for this delay.  For these reasons, the Court should deny the Debtors' request to extend exclusivity.

### II.     The Debtors Have Failed to Make Good Faith Progress on a Plan

21. Although § 1121(d) does not define "cause," courts have identified "good faith" progress toward reorganization as being relevant in determining whether "cause" exists.  *See, e.g., In re Adelphia Communications Corp.*, 342 B.R. 122 (S.D.N.Y. 2006); *In re Henry Mayo Newhall Memorial Hosp.*, 282 B.R. 444, 40 Bankr. Ct. Dec. (CRR) 14, 48 Collier Bankr. Cas. 2d (MB) 1716 (B.A.P. 9th Cir. 2002); *In re Grand Traverse Development Co., Ltd.*, 147 B.R. 418 (Bankr.W.D.Mich.1992); *In re McLean Industries, Inc.*, 87 B.R. 830 (Bankr.S.D.N.Y.1988); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 15 Bankr. Ct. Dec. (CRR) 211 (Bankr. E.D. Pa. 1986).

22. Here, Debtors have failed to make good faith progress on their plan.  Instead, Debtors sought to exploit the chapter 11 process to obtain this Court's blessing over what appears to be their collusive prepetition agreement with Hilton.  At the Estimation Hearing, Mr. Hirbod testified that "even before" he purchased the Hotel, he had "contemplated many different options, including" swapping out Fairmont as the Operator.  June 10 Tr., 176:11-19.  In fact, Mr. Hirbod began soliciting Accor's competitors behind Accor's back as early as May 17, 2019—just over a year after purchasing the Hotel.  AX-35 (Thomas Morone of CHMWarnick reached out on behalf of Mr. Hirbod to Hilton to discuss taking over the Hotel).  A few days later, Mr. Morone provided Mr. Hirbod with Hilton's contact, but noted that due to "tortious interference (fears), Hilton can not call you and [CHMWarnick], by extension can't initiate the initial conversation."  AX-36.  Hilton would go on to tour the Hotel "completely incognito" to avoid tipping off Accor as to Debtors' impending termination.  AX-42; AX-44.

23.     On October, 29, 2020, despite having already conspired with Hilton for more than a year to take over the Hotel, Mr. Hirbod finally asked Ms. Heather McCrory, Accor's Chief Executive Officer of North and Central America, for permission to shop around the Hotel to other brands. JX-110a. As Mr. Hirbod evidently expected given his covert operations with Hilton, Ms. McCrory rejected his request and made clear that Accor would not "participate in any efforts that would see the hotel branded and operated by another party" because "HMA's are the backbone of [Accor's] business model." JX-113. Nevertheless, about one month later, Hilton and Debtors' secured lender, Colony Capital, Inc., began "working on documentation that basically says if Colony were to work with Hilton on any hotel, these would be the terms." AX-56. It therefore comes as no surprise that Debtors selected Hilton (Signia Hotel Management LLC) as the prevailing hotel brand on May 21, 2021. Docket No. No. 391. Debtors are now seeking to have their transaction with Hilton approved through the Second Amended Plan.

24.     In sum, Debtors made a calculated, bad faith attempt to use the plan confirmation process to switch in Hilton, restructure their obligations, and improperly manipulate the bankruptcy process to reduce the amount due Accor for termination of the HMA, all at the expense of Accor, Debtors' employees, and other unsecured creditors.

### III.    The Alleged "Complexities" of the Chapter 11 Cases Are Not Cause for an Extension of Exclusivity

25.     These Chapter 11 Cases do not present sufficient complexity to warrant an extension of exclusivity. The legislative history for Bankruptcy Code Section 1121 provides, "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." *See* H.R.

28377276.1

Rep. No. 95-595, at 232 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 91977). In considering what "size and complexity" would support an extension of exclusivity, the *Adelphia* court noted that the cases before it were of:

> . . . unprecedented complexity and overwhelming size . . . involv[ing] 231 debtors, 6 different prepetition credit facilities, approximately 30 issuances of outstanding public indebtedness at different levels of a complex capital structure, numerous and exceedingly complex Intercreditor Dispute issues, SEC and DOJ investigations and settlements, massive ongoing litigation among stakeholders, the wholesale departure of [family] management, the effects of the massive prepetition fraud of [family] management, an approximately $17.6 billion sale transaction of unprecedented size and scope in a chapter 11 proceeding, and numerous other complicated matters and issues.

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006), clarified on denial of reconsideration, No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006) (internal citation omitted).

26. The size and complexity of these Chapter 11 Cases do not weigh in favor of further extending the Debtors' exclusivity. Unlike many chapter 11 cases, the Debtor's capital structure here is not complex; these cases involve a single, non-operating hotel with a limited number of creditors and a simple capital structure. Further, the Debtors have had ample time to implement a plan of reorganization, but, as discussed above, have failed to make good faith progress on their proposed plan. Despite, however, the lack of good faith progress, Mr. Sam Hirbod testified on June 1, 2021:

> Well we're in the middle of negotiating our hotel management agreement. . . . Most of the business terms have already been negotiated. We've had multiple conversations focusing on the business issues and allowing the attorneys to focus on legal issues. I would say ***we're in the bottom of the eighth, top of the ninth inning*** of the business issues. I think both parties would sign what we have today . . .

June 1, 2021, Disclosure Statement Approval Hearing Transcript 30:23-31:13 (emphasis supplied).

27. The completion of the mezzanine financing does not support the extension either. Instead of being a complex transaction requiring time for extensive diligence, Mr. Hirbod testified that "this mezzanine financing is far more like a commodity then a lot of mezzanine financing" and that the transaction can be done "with very, very little due diligence" because of the parent guaranty provided by Hilton. June 1, 2021, Disclosure Statement Approval Hearing Transcript 16:12-17:25.

28. Based on this assertion – nearly a month and a half ago – that the parties' negotiations were nearly complete, there is no justification for an extension. These are straightforward cases in which the Debtors have simply failed to make good faith progress on their proposed plan. The size and complexity of the Debtors case do not weigh in favor of extending the Debtors' exclusivity and any extension should be denied.

## **CONCLUSION**

WHEREFORE, Accor respectfully requests that the Court deny the Exclusivity Motion.

| | |
|---|---|
| Dated: July 16, 2021 | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Wilmington, Delaware<br><br>*/s/ S. Alexander Faris*<br>Sean M. Beach (No. 4070) sbeach@ycst.com<br>S. Alexander Faris (No. 6278) afaris@ycst.com<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>- and -<br><br>SIDLEY AUSTIN LLP<br>Samuel A. Newman sam.newman@sidley.com<br>Genevieve G. Weiner gweiner@sidley.com<br>Julia Philips Roth julia.roth@sidley.com<br>555 West Fifth Street<br>Los Angeles, California 90013<br>Telephone: (213) 896-6000<br>Facsimile: (213) 896-6600<br><br><br>SIDLEY AUSTIN LLP<br>Chad S. Hummel chummel@sidley.com<br>1999 Avenue of the Stars, 17 Floor<br>Los Angeles, California 90067<br>Telephone: (310) 595-9500<br>Facsimile: (310) 595-9501<br><br>*Counsel to Accor Management US Inc. (f/k/a Fairmont Hotels and Resorts (U.S.) Inc.)* |