**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SC SJ HOLDINGS LLC, *et al.*[1] | Case No. 21-10549 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos. 391, 546, 557, 600, 653, 660, & 664** |

## DEBTORS' MEMORANDUM IN SUPPORT OF
## THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

PILLSBURY WINTHROP SHAW
PITTMAN LLP
Patrick Potter
Dania Slim
Rahman Connelly
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8928
Facsimile: (202) 663-8007

*Counsel to the Debtors and
Debtors in Possession*

COLE SCHOTZ P.C.
Justin Alberto (No. 5126)
Patrick Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Counsel to the Debtors and
Debtors in Possession*

August 13, 2021

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: SC SJ Holdings LLC (5141) and FMT SJ LLC (7200). The mailing address for both Debtors is 3223 Crow Canyon Road, Suite 300 San Ramon, CA 94583.

4850-7916-5685.v9

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

PART I BACKGROUND AND SUMMARY OF THE PLAN ................................................. 3

   A.   General Background Regarding the Chapter 11 Cases .................................................. 3

   B.   Approval of the Disclosure Statement and Solicitation Procedures ............................. 3

   C.   The Plan and Voting Results ........................................................................................ 7

   D.   Plan Modifications ..................................................................................................... 10

PART II THE PLAN MEETS THE REQUIREMENTS FOR CONFIRMATION PURSUANT
TO SECTION 1129 OF THE BANKRUPTCY CODE ........................................................ 11

   A.   Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of the
      Bankruptcy Code ....................................................................................................... 12

      I.   Section 1122 – The Plan Groups Only "Substantially Similar" Claims or Equity
         Interests in the Same Class ................................................................................. 12

      II.   Section 1123(a) – The Plan Contains All Mandatory Content ........................... 14

         a.   Section 1123(a)(1) – The Plan Designates Classes of Claims and Equity
            Interests ................................................................................................... 14

         b.   Section 1123(a)(2) – The Plan Identifies Which Classes of Claims or
            Equity Interests Are Unimpaired .............................................................. 15

         c.   Section 1123(a)(3) – The Plan Specifies the Treatment of Impaired
            Classes of Claims or Equity Interests ...................................................... 15

         d.   Section 1123(a)(4) – The Plan Treats Claims and Equity Interests in the
            Same Class Equally ................................................................................... 15

         e.   Section 1123(a)(5) – The Plan Provides Adequate Means for its
            Implementation ........................................................................................ 16

         f.   Section 1123(a)(6) – The Plan Does Not Provide for the Issuance of Non-
            Voting Equity Securities and the Limited Liability Company Agreements
            for Reorganized SC SJ and New Lessee Include Prohibitions on the
            Issuance of Non-Voting Equity Securities ............................................... 16

         g.   Section 1123(a)(7) – The Plan's Provisions Regarding the Independent
            Managers of the Post-Effective Date Debtors are Consistent with the
            Interests of the Estate's Stakeholders and Public Policy .......................... 17

      III.   Section 1123(b) – The Plan Contains Discretionary Provisions Permissible
         Under the Bankruptcy Code ................................................................................ 17

      IV.   The Release, Exculpation, and Injunction Provisions are Permissible .............. 19

         a.   The Debtor Releases Are Appropriate and Should Be Approved ........... 20

         b.   The Third-Party Releases Are Consensual and Should Be Approved ...... 24

i

  c. The Exculpation Provision Is Appropriate Under the Circumstances of These Chapter 11 Cases ............................................................... 28

  d. The Injunction Provision Is Necessary to Enforce the Releases and Exculpation ........................................................................... 29

B. Section 1129(a)(2) – The Debtors Have Complied with All Applicable Provisions of the Bankruptcy Code .................................................................. 29

C. Section 1129(a)(3) – The Debtors Have Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law .................................................................. 30

D. Section 1129(a)(4) – Payments Have Been Approved by the Court or Remain Subject to the Court's Approval .................................................................. 32

E. Section 1129(a)(5) – The Debtors Have Made the Necessary Disclosures Regarding the Post-Effective Date Debtors' Managers and Insiders ............................. 32

F. Section 1129(a)(6) – The Plan Does Not Provide for a Change in Rates Over Which a Governmental Regulatory Commission Has Jurisdiction ............................. 33

G. Section 1129(a)(7) – The Plan Satisfies the "Best Interests" Test ................. 33

H. Section 1129(a)(8) – The Requirements of Section 1129(a)(8) Are Substantively Satisfied; Alternatively, the Plan Can be Confirmed Under the "Cram Down" Provisions of Section 1129(b) .................................................................. 35

 I. The Plan is Confirmable as a Fully Consensual Plan Under Section 1129(a)(8) 35

 II. Alternatively, the Plan Can be Confirmed Under the "Cram Down" Provisions of Section 1129(b) .................................................................. 36

I. Section 1129(a)(9) – The Plan Provides for the Payment of Claims and Administrative Expenses with Priority in Accordance with Section 1129(a)(9) ................... 36

J. Section 1129(a)(10) – At Least One Class That Would be Impaired Under the Plan Voted to Accept the Plan .................................................................. 36

K. Section 1129(a)(11) – The Plan is Feasible ............................................... 37

L. Section 1129(a)(12) – The Plan Provides for the Payment of Necessary Fees ........... 38

M. Section 1129(a)(13) – The Plan Provides for Continuation of Retiree Benefits ......... 38

N. Conclusion – The Court Should Confirm the Plan under Section 1129 ............... 39

PART III ALL OBJECTIONS TO THE PLAN HAVE BEEN RESOLVED ....................... 39

CONCLUSION ............................................................................................ 40

4850-7916-5685.v9

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*In re Abbotts Dairies of Pa., Inc.*,
  788 F.2d 143 (3d Cir. 1986)...............................................................................31

*In re Affiliated Foods, Inc.*,
  249 B.R. 770 (Bankr. W.D. Mo. 2000)..............................................................33

*In re Aleris Int'l, Inc.*,
  No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010).............21

*In re Am. Capital Equip., LLC*,
  688 F.3d 145 (3d Cir. 2012)...............................................................................37

*In re Am. Solar King Corp.*,
  90 B.R. 808 (Bankr. W.D. Tex. 1988).................................................................11

*In re Armstrong World Indus., Inc.*,
  432 F.3d 507 (3d Cir. 2005)..........................................................................11, 35

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999)............................................................................................31

*Chase Manhattan Mortg. & Realty Trust v. Bergman (In re Bergman)*,
  585 F.2d 1171 (2d Cir. 1978).............................................................................37

*In re Clamp-All Corp.*,
  233 B.R. 198 (Bankr. D. Mass. 1999) ................................................................30

*Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*,
  767 F.2d 417 (8th Cir. 1985) .............................................................................37

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004)...............................................................................36

*DeVore v. Marshack (In re DeVore)*,
  223 B.R. 193 (B.A.P. 9th Cir. 1998)...................................................................27

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2nd Cir. 1992)........................................................................29, 37

*In re Eagle Bus Mfg., Inc.*,
  62 F.3d 730 (5th Cir. 1995) ...............................................................................27

iii

*In re Exaeris, Inc.*,
   380 B.R. 741 (Bankr. D. Del. 2008) ...................................................................20

*In re Exide Techs.*,
   303 B.R. 48 (Bankr. D. Del. 2003) .....................................................................25

*In re G-I Holdings Inc.*,
   420 B.R. 216 (D.N.J. 2009) ................................................................................14

*In re Gibson Brands, Inc.*,
   No. 18-11025 (CSS) (Bankr. D. Del. Oct. 2018) ................................................25

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ..............................................................25, 30

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   843 F.2d 636 (2d Cir. 1988) ............................................................................35, 37

*In re Lernout & Hauspie Speech Prods., N.V.*,
   301 B.R. 651 (Bankr. D. Del. 2003) ...................................................................10

*Marvel Entm't Grp., Inc. v. Mafco Holdings, Inc. (In re Marvel Entm't Grp.,
   Inc.)*,
   273 B.R. 58 (D. Del. 2002) .................................................................................21

*In re Master Mortgage Inv. Fund, Inc.*,
   168 B.R. 930 (Bankr. W.D. Mo. 1994) ..............................................................23

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) ...................................................................12

*In re Paragon Offshore PLC*,
   No. 16-10386 (CSS) (Bankr. D. Del. June 7, 2017) ...........................................26

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000) .....................................................................28, 29, 31

*Sinclair Oil Corp. v. Levien*,
   280 A.2d 717 (Del. 1971) ...................................................................................21

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011), *modified*, 464 B.R. 208 (Bankr. D. Del.
   2011) ....................................................................................................................23

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
   426 B.R. 114 (Bankr. D. Del. 2010) ..............................................................21, 25

iv

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) .................................................................. 30, 31, 33

*In re Washington Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) .................................................................. 28

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) .................................................................. 23, 24, 25

## Statutes

United States Code
    Title 11, Section 507(a) .................................................................. 13, 36
    Title 11, Section 507(a)(2) .................................................................. 14
    Title 11, Section 507(a)(3) .................................................................. 14
    Title 11, Section 507(a)(8) .................................................................. 14
    Title 11, Section 510 .................................................................. 14
    Title 11, Section 1102(a) .................................................................. 3
    Title 11, Section 1107 .................................................................. 3
    Title 11, Section 1108 .................................................................. 3
    Title 11, Section 1114(a) .................................................................. 38
    Title 11, Section 1122 .................................................................. 12, 14
    Title 11, Section 1123 .................................................................. 12
    Title 11, Section 1123(a) .................................................................. 14
    Title 11, Section 1123(a)(1) .................................................................. 12, 14, 15
    Title 11, Section 1123(a)(2) .................................................................. 15
    Title 11, Section 1123(a)(3) .................................................................. 15
    Title 11, Section 1123(a)(4) .................................................................. 15
    Title 11, Section 1123(a)(5) .................................................................. 16,
    Title 11, Section 1123(a)(6) .................................................................. 16, 17
    Title 11, Section 1123(a)(7) .................................................................. 17
    Title 11, Section 1123(a)(8) .................................................................. 14
    Title 11, Section 1123(b) .................................................................. 17, 19, 20
    Title 11, Section 1123(b)(1) .................................................................. 17
    Title 11, Section 1123(b)(2) .................................................................. 18
    Title 11, Section 1123(b)(3)(A) .................................................................. 18, 21, 24
    Title 11, Section 1123(b)(3)(B) .................................................................. 18
    Title 11, Section 1123(b)(5) .................................................................. 19
    Title 11, Section 1123(b)(6) .................................................................. 19
    Title 11, Section 1125 .................................................................. 29, 30
    Title 11, Section 1125(b) .................................................................. 29
    Title 11, Section 1126 .................................................................. 29
    Title 11, Section 1126(f) .................................................................. 8
    Title 11, Section 1126(g) .................................................................. 9
    Title 11, Section 1127(a) .................................................................. 11
    Title 11, Section 1127(d) .................................................................. 11
    Title 11, Section 1129 .................................................................. 2, 11, 39

Title 11, Section 1129(a)......................................................................................9, 11, 35, 39
Title 11, Section 1129(a)(1)...................................................................................................12
Title 11, Section 1129(a)(2)............................................................................................29, 30
Title 11, Section 1129(a)(3)............................................................................................30, 31
Title 11, Section 1129(a)(4)............................................................................................31, 32
Title 11, Section 1129(a)(5)(A)(i)..........................................................................................32
Title 11, Section 1129(a)(6)............................................................................................32, 33
Title 11, Section 1129(a)(7)............................................................................................33, 34
Title 11, Section 1129(a)(8).......................................................................................... *passim*
Title 11, Section 1129(a)(9)....................................................................................................36
Title 11, Section 1129(a)(10)..................................................................................................36
Title 11, Section 1129(a)(11)...........................................................................................37, 38
Title 11, Section 1129(a)(12)..................................................................................................38
Title 11, Section 1129(a)(13)...........................................................................................38, 39
Title 11, Section 1129(a)(14)..................................................................................................12
Title 11, Section 1129(a)(15)..................................................................................................12
Title 11, Section 1129(a)(16)..................................................................................................12
Title 11, Section 1129(b).............................................................................................9, 10, 34, 35
Title 11, Section 1129(b)(1).....................................................................................9, 10, 11, 35
Title 11, Section 1129(b)(1)(C)(ii).........................................................................12, 35, 39
Title 28, Section 1930..............................................................................................................38

## Rules

Federal Rules of Bankruptcy Procedure

Rule 3017..................................................................................................................................30
Rule 3018..................................................................................................................................30
Rule 3019(a).............................................................................................................................11
Rule 9019...........................................................................................................................18, 20

4850-7916-5685.v9

SC SJ Holdings LLC ("**SC SJ**") and FMT SJ LLC ("**FMT**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully request that this Court confirm the *Third Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 660] (as altered, amended, modified, or supplemented from time to time, the "**Plan**").[2]  In support of their request, the Debtors rely on and incorporate by reference the Declarations of Neil Demchick (the "**Demchick Declaration**"), Sam Hirbod (the "**Hirbod Declaration**"), Thomas Morone (the "**Morone Declaration**"), and Aileen Daversa (the "**Daversa Declaration**" and collectively, the "**Declarations**") filed contemporaneously herewith.  In further support, the Debtors respectfully represent as follows:

## INTRODUCTION

1.      The Debtors stand on the cusp of confirming a Plan with overwhelming support from creditors and other economic stakeholders.  The Plan is a significant achievement because it maximizes recoveries for creditors and will allow SC SJ to rebrand and reopen the Hotel under the management of a leading hotel operator, which will preserve and restore countless jobs and help revive the San Jose local economy.

2.      Before and during these Chapter 11 Cases, the Debtors worked tirelessly to negotiate the terms of a consensual chapter 11 with their major economic stakeholders.  Prior to the Petition Dates, the Debtors negotiated a restructuring support agreement with the Prepetition Secured Lender built around the key goals of rebranding the Hotel, raising subordinate financing, and extending the maturity date on the Prepetition Secured Loan for up to 5 years.

---

[2]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.  Nothing in the Memorandum modifies the Plan or Confirmation Order, and in the event of any unintentional inconsistency, the Plan (as confirmed) and the Confirmation Order (as entered) control.

3.     The Debtors also constructively engaged with the Committee in an effort to negotiate a consensual chapter 11 plan that would provide fair treatment for unsecured creditors. After extensive negotiations, the Debtors and the Committee reached consensus on the terms of a Plan that provides a 25% cash recovery for Holders of Allowed FMT General Unsecured Claims. In a liquidation scenario, these creditors would receive no recovery.

4.     Finally, after months of litigating with Fairmont in this Court, the Debtors and Fairmont have reached an agreement on the terms of the Plan, which resolve Fairmont's objections (including those centered on Plan feasibility) and channels remaining disputes between the Debtors and Fairmont to arbitration.

5.     The Debtors have also negotiated in good faith to achieve an optimal outcome for various smaller creditor constituencies.  Notably, the Plan provides for the assumption of all of the Debtors' collective bargaining agreements, which will preserve jobs and ensure that the interests of Hotel employees are zealously represented.  Similarly, the Debtors have entered into countless settlements with individual creditors over the amount and treatment of their Claims.  In sum, the Debtors have endeavored to reach consensus with their key stakeholders to be able to present the Court with a Plan that has the overwhelming support of the Debtors' creditors.

6.     The Debtors have resolved all objections to the Plan and are seeking confirmation on a purely consensual basis.  The Debtors submit that the overwhelming support for their reorganization from all material stakeholders and the evidence set forth in this Memorandum, the Declarations, and the other evidence to be adduced at the Confirmation Hearing easily demonstrate, by a preponderance of the evidence, that the Plan satisfies section 1129 of the Bankruptcy Code.  The Plan should thus be confirmed.

4850-7916-5685.v9

**PART I**
**BACKGROUND AND SUMMARY OF THE PLAN**

A.    **General Background Regarding the Chapter 11 Cases**

7.    On March 5, 2021 and March 10, 2021, respectively, FMT and SC SJ filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are

being jointly administered.  The factual background regarding the Debtors, including their business

operations, their capital and debt structure, and the events leading to the filing of the Chapter 11

Cases is set forth in the *Declaration of Neil Demchick in Support of Chapter 11 Petitions and First*

*Day Pleadings* [Docket No. 11].  The Debtors continue to manage and operate their businesses as

debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8.    On March 26, 2021, the Office of the United States Trustee for Region 3 (the "**U.S.**

**Trustee**") appointed a three-member official committee of unsecured creditors (the "**Committee**")

pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 100].  On April 9, 2021, the U.S.

Trustee appointed a fourth member to the Committee [Docket No. 179].  No trustee or examiner

has been appointed in the Chapter 11 Cases.

B.    **Approval of the Disclosure Statement and Solicitation Procedures**

9.    On March 22, 2021, the Debtors filed the *Joint Chapter 11 Plan of Reorganization*

[Docket No. 88] and corresponding *Disclosure Statement with Respect to Joint Chapter 11 Plan*

*of Reorganization* [Docket No. 89], each of which was amended on May 11, 2021, on May 24,

2021, and on May 26, 2021 [Docket Nos. 295–296, 342–343, 352–353].

10.    On June 1, 2021, the Court held a hearing on Debtors' motion to approve, among

other things, the Disclosure Statement (defined below).

11.    On June 3, 2021, the Debtors filed the *Amended Disclosure Statement with Respect*

*to Amended Joint Chapter 11 Plan of Reorganization* (the "**Disclosure Statement**") [Docket

3

No. 391], which included changes discussed at the June 1, 2021 hearing and a full set of updated exhibits.

12.    On June 3, 2021, the Court entered an order (the "**Solicitation Procedures Order**") [Docket No. 396] (a) approving the Disclosure Statement; (b) scheduling a hearing on confirmation of the Plan; (c) establishing deadlines and procedures for (i) filing objections to confirmation of the Plan, (ii) claim objections, and (iii) temporary allowance of claims for voting purposes; (d) determining treatment of claims for notice, voting, and distribution purposes; (e) setting a record date; (f) approving (i) solicitation packages and procedures for distribution, (ii) the form of notice of the hearing on confirmation, and (iii) forms of ballots; (g) establishing a voting deadline and procedures for tabulation of votes; and (h) granting related relief.

13.    On or around June 4, 2021, the Debtors caused their voting agent, Stretto, to commence solicitation of the Plan in accordance with the terms of the Solicitation Procedures Order as summarized below.[3]  At the time, the only Holders of Claims entitled to vote on the Plan were Classes 3(A) (SC SJ Prepetition Secured Loan Claims), 3(B) (FMT Prepetition Secured Loan Claims), and 4(B) (FMT General Unsecured Claims).

14.    On or around June 4, 2021, Stretto mailed the approved materials to Holders of Allowed Claims in Classes 3(A) and 3(B) [Docket No. 423], including copies of:

(a)    the Notice of (A) Confirmation Hearing with Respect to Amended Joint Chapter 11 Plan of Reorganization and (B) Related Objection Deadline;

(b)    a Ballot for Class 3(A) SC SJ Prepetition Secured Loan Claims;

(c)    a Ballot for Class 3(B) FMT Prepetition Secured Loan Claims;

(d)    the Amended Disclosure Statement with Respect to Amended Joint

---

[3]  A more detailed description of Stretto's distribution of the solicitation materials is set forth in Stretto's *Affidavit of Service of Solicitation Materials* [Docket No. 423].

4850-7916-5685.v9

Chapter 11 Plan of Reorganization; and

(e)     the Solicitation Order.

15.     On or around June 4, 2021, Stretto also mailed the approved materials to Holders of Allowed Claims in Class 4(B) [Docket No. 423, 526, 540], including copies of:

(a)     the Notice of (A) Confirmation Hearing with Respect to Amended Joint Chapter 11 Plan of Reorganization and (B) Related Objection Deadline;

(b)     a Ballot for Class 4(B) FMT General Unsecured Claims;

(c)     the Official Committee of Unsecured Creditors' Vote "No" Recommendation;

(d)     Amended Disclosure Statement with Respect to Amended Joint Chapter 11 Plan of Reorganization; and

(e)     the Solicitation Order.

16.     On or around June 4, 2021, Stretto mailed the approved materials to Holders of Claims and Interests in Unimpaired Classes (*i.e.*, Classes 1 (Other Priority Claims), 2 (Other Secured Claims), 4(A) (SC SJ General Unsecured Claims), 6(A) (SC SJ Subordinated Claims), and 7(A) (SC SJ Equity Interest)) [Docket Nos. 423, 526, 540], including copies of:

(a)     the Opt-Out Form;

(b)     the Notice of (A) Confirmation Hearing with Respect to Amended Joint Chapter 11 Plan of Reorganization and (B) Related Objection Deadline; and

(c)     the Notice of Non-Voting Status with Respect to Unimpaired Classes.

17.     On or around June 4, 2021, Stretto mailed the approved materials to Holders of Claims and Interests in Class 5 (Inter-Debtor Claims), Class 6(B) (FMT Subordinated Claims), and Class 7(B) (FMT Equity Interest), which are deemed to reject the Plan [Docket Nos. 423, 526, 540]. Stretto's package included:

(a)     the Opt-Out Form;

5

(b)    the Notice of (A) Confirmation Hearing with Respect to Amended Joint Chapter 11 Plan of Reorganization and (B) Related Objection Deadline; and

(c)    the Notice of Non-Voting Status With Respect to Impaired Claims.

18.    Further, on June 8, 2021, the Debtors caused the Confirmation Hearing Notice to be published in the national edition of *The New York Times*. *See Affidavit of Publication of Edgar Noblesala for The New York Times* [Docket Nos.424].

19.    On June 24, 2021, the Debtors filed the *Revised Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 485], reflecting changes to the Plan to incorporate a settlement agreement between the Debtors and the Committee (the "**Committee Settlement Agreement**") that provides for, among other things, an increased recovery for Holders of allowed general unsecured claims against FMT.

20.    On June 25, 2021 and July 28, 2021, in accordance with the Plan, the Debtors filed notices [Docket Nos. 489, 600] containing various documents that comprise the Plan Supplement, including the Committee Settlement Agreement.

21.    On July 13, 2021, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 546], reflecting changes made in response to the Court's ruling on June 29, 2021, estimating Fairmont's HMA Damages Claim, solely for purposes of plan feasibility, at $22.24 million (the "**Estimation Ruling**") [Docket No. 545].  The changes to the Plan resulted in the impairment of Class 4(C) (the Fairmont General Unsecured Claim).  As a result, on July 13, 2021, the Debtors moved for an order approving the solicitation of Class 4(C) and the adequacy

4850-7916-5685.v9

of a supplement for the Disclosure Statement (the "**Disclosure Statement Supplement**") for purposes of soliciting the vote of Class 4(C) [Docket No. 548].[4]

22.     On August 4, 2021, the Court conditionally approved the adequacy of the Disclosure Statement Supplement for purposes of soliciting the vote of Class 4(C) and conditionally authorized the solicitation of Class 4(C) [Docket No. 623].  On August 6, 2021, Stretto mailed a Ballot for Class 4(C) to Fairmont.

23.     On August 11, 2021, the Debtors filed the *Revised Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 653], reflecting further changes to the Plan.  The changes principally incorporate the treatment of any Allowed Fairmont General Unsecured Claim, as agreed to by Fairmont.

**C.     The Plan and Voting Results**

24.     The Plan represents the culmination of significant collaboration between the Debtors and their creditors, and incorporates comments by several parties in interest, including the Committee and U.S. Trustee.

25.     The Plan provides for, among other things:

(a)     the reorganization of SC SJ and continuation of its business via entry into the New Lease and entry into the New Hotel Management Agreement with Signia Hotel Management LLC ("**Hilton**"), based on $15 million of key money and the guaranty of the $25 million Qualified Mezzanine Loan by a Hilton affiliate;

(b)     execution of Post-Effective Date Secured Loan Documents that will, among other things, extend the maturity date of the Prepetition Secured Loan for at least three years; and

(c)     funding and commitments from Eagle Canyon (SC SJ's parent company) as necessary to pay Allowed Claims on and after the Effective Date.

---

[4]   On July 14, 2021, the Debtors filed a notice with the Disclosure Statement Supplement for the Second Amended Joint Chapter 11 Plan of Reorganization [Docket No. 557].

4850-7916-5685.v9

26.     The Plan defines twelve classes of Claims and Equity Interests, four of which—Class 3(A) (SC SJ Prepetition Secured Loan Claims), Class 3(B) (FMT Prepetition Secured Loan Claims), Class 4(B) (FMT General Unsecured Claims), and Class 4(C) (Fairmont General Unsecured Claim)—were entitled to vote accept or reject the Plan.  All four classes voted in favor of the Plan and evidence strong creditor support for the Plan:

(a)     100% in amount and 100% in number of the Holders of Claims in Class 3(A) (SC SJ Prepetition Secured Loan Claims) voting on the Plan voted in favor of confirmation of the Plan;

(b)     100% in amount and 100% in number of the Holders of Claims in Class 3(B) (FMT Prepetition Secured Loan Claims) voting on the Plan voted in favor of confirmation of the Plan;

(c)     99.68% in amount and 73.02% in number of the Holders of Claims in Class 4(B) (FMT General Unsecured Claims) voting on the Plan voted in favor of confirmation of the Plan; and

(d)     100% in amount and 100% in number of the Holders of Claims in Class 4(C) (Fairmont General Unsecured Claim) voting on the Plan voted in favor of confirmation of the Plan.[5]

See Daversa Declaration at ¶ 19.

27.     Five Classes—Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 4(A) (SC SJ General Unsecured Claims),[6] Class 6(A) (SC SJ Subordinated Claims), and Class 7(A) (SC SJ Equity Interest)—are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code because none are impaired under the Plan.  See 11 U.S.C. § 1126(f) ("[A]

---

[5] Notwithstanding the amount that Fairmont asserts in its Ballot for Class 4(C), the Debtors dispute the amount of any Fairmont General Unsecured Claim and reserve all rights. The Debtors assert that under the Solicitation Procedures Order, Fairmont's claim should be voted at $1.00 after netting all claims that Fairmont owes the Debtors.  The Debtors, however, accept Fairmont's Ballot for Class 4(C) in support of the Plan without waiving any rights.

[6] Notably, there are no Allowed SC SJ General Unsecured Claims (i.e., Class 4(A) is a vacant class).  The only general unsecured claim that has been filed against SC SJ and not moved or withdrawn is not an Allowed Claim because it was objected to without the claimant timely responding.  See Proof of Claim No. 107; Docket No. 575.

4850-7916-5685.v9

class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.").

28.     Technically, three Classes—Class 5 (Inter-Debtor Claims), Class 6(B) (FMT Subordinated Claims), and Class 7(B) (FMT Equity Interests)—are presumed (*i.e.*, "deemed") to have rejected the Plan under section 1126(g) of the Bankruptcy Code because they are not receiving a recovery under the Plan. *See id.* § 1126(g) ("[A] class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."). Classes 5 and 7(B) are comprised solely of the Debtors and their equity owner, the sponsors of the Plan, who fully support confirmation the Plan, and therefore overcome any presumption of rejection.  In addition, no Class 6(B) claims exist, and therefore the class should be ignored for purposes of Plan confirmation.

29.     Thus, as more fully explained below, the Plan is confirmable as a fully consensual plan under section 1129(a) because every impaired class has accepted the Plan by (i) casting a ballot in favor of the Plan (in the case of Classes 3(A), 3(B), 4(B) and 4(C)); or (ii) being a proponent or sponsor of the Plan and thereby supporting and accepting the Plan (in the case of Class 5 (Inter-Debtor Claims) and Class 7(B) (FMT Equity Interests)).[7] *See* 11 U.S.C. § 1129(b)(i) (cram down applies only as to each class of claims or interests that "has not accepted[] the plan"). However, even if the Court finds that Class 7(B) (the only class that could theoretically lead to

---

[7]  No creditor has filed a subordinated claim against the Debtors, and the Debtors are not otherwise aware of any claims under Class 6(B) (FMT Subordinated Claims).  Consequently, Class 6(B) does not prevent confirmation of the Plan under section 1129(a) as a fully consensual plan (*i.e.*, there is no need for the Debtors to establish that section 1129(b) of the Bankruptcy Code is satisfied as to Class 6(B)).

4850-7916-5685.v9

"cram down") has not accepted the Plan, the Plan can nevertheless be confirmed because all requirements for a "cram down" under section 1129(b) of the Bankruptcy Code have been satisfied. *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (Bankr. D. Del. 2003) ("Where, as here, at least one impaired class of claims has not consented to the proposed plan, the 'cram down' provisions of 11 U.S.C. § 1129(b)(1) come into play.  [They] require confirmation 'if the plan does not discriminate unfairly, and is fair and equitable' with respect to each impaired non-consenting [class].").

## D.    Plan Modifications

30.    In accordance with section 1127(a) of the Bankruptcy Code, the Debtors have filed amendments to the Plan.  First, on June 24, 2021, the Debtors filed an amendment to the Plan [Docket No. 486] that drastically improved the economic treatment of the Allowed FMT General Unsecured Claims pursuant to the Committee Settlement.  Whereas, under the prior version of the Plan, the Holders of Allowed FMT General Unsecured Claims were to receive their Pro Rata share of $500,000, under the current Plan, they will now receive Cash distributions aggregating 25% of their Allowed FMT General Unsecured Claims.  Second, after negotiations with Fairmont, on August 11, 2021, the Debtors filed an amendment to the Plan [Docket No. 653] that modifies Sections 4.7 and 5.9 (and other provisions) of the Plan as to the treatment and resolution of any Allowed Fairmont General Unsecured Claim.

31.    Since the Plan was confirmable prior to the most recent revisions and the revisions enhance the distributions to any Class impacted by the amendments, the Debtors respectfully submit that they are not required to resolicit the revised Plan with respect to any Class.  Indeed, section 1127(d) of the Bankruptcy Code provides that "[a]ny holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan

10

as modified . . . ."[8]  Further, as the revised Plan does not "adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification," such Plan should be deemed accepted by Classes 3(A), 3(B), 4(B), and 4(C), the only classes whose votes were solicited.[9]

32.     Any additional Plan modifications will not materially adversely affect the treatment of the Classes of Claims that voted to accept the Plan.[10]  Therefore, any additional modifications will not require the Debtors to re-solicit acceptances of the Plan.[11]

**PART II**
**THE PLAN MEETS THE REQUIREMENTS FOR CONFIRMATION**
**PURSUANT TO SECTION 1129 OF THE BANKRUPTCY CODE**

33.     Under section 1129(b)(1) of the Bankruptcy Code, the Plan must be confirmed if the Debtors prove by a preponderance of the evidence that all requirements of section 1129(a) are met.  If all the requirements of section 1129(a), except those in section 1129(a)(8), are satisfied, then the Plan must be confirmed if it does not "discriminate unfairly" against, and is "fair and equitable" with respect to, each Class that is Impaired under the Plan and has not accepted it.  11 U.S.C. § 1129(b)(1); *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511–12 (3d Cir. 2005). As set forth below, the Plan should be confirmed because the requirements of section 1129(a) are

---

[8]  11 U.S.C. § 1127(d).

[9]  *See* Fed. R. Bankr. P. 3019(a); *In re Am. Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) ("[I]f a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.").

[10]  *See* 11 U.S.C. § 1127(a) ("The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.").

[11]  *See supra* n.9.

11

satisfied.[12]  Even if the Court determines that section 1129(a)(8) is not met because FMT's equity

holder is, as a technical matter, presumed to have rejected the plan that it sponsors, supports and

approves, the Plan should still be confirmed because section 1129(b)(1)(C)(ii), the only "cram

down" requirement that would apply, is easily satisfied because, as a matter of fact, no interests

junior to FMT's equity interest exist.

**A.    Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of the Bankruptcy Code**

34.    Under section 1129(a)(1) of the Bankruptcy Code, the Court may confirm the Plan

only if it "complies with the applicable provisions of [the Bankruptcy Code]."

11 U.S.C. § 1129(a)(1).  Section 1129(a)(1) requires that the Plan comply with sections 1122 and

1123 of the Bankruptcy Code.  *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr.

D. Del. 2008).

**I.    Section 1122 – The Plan Groups Only "Substantially Similar" Claims or Equity Interests in the Same Class**

35.    Section 1122 of the Bankruptcy Code requires that claims or interests within a class

be "substantially similar":

> (a)    Except as provided in [section 1122(b)], a plan may place a claim or
> an interest in a particular class only if such claim or interest is
> substantially similar to the other claims or interests of such class.
>
> (b)    A plan may designate a separate class of claims consisting only of
> every unsecured claim that is less than or reduced to an amount that
> the court approves as reasonable and necessary for administrative
> convenience.

11 U.S.C. § 1122.  Here, the Plan meets the requirements of section 1122 of the Bankruptcy Code.

In accordance with section 1123(a)(1), Administrative Expense Claims, Professional Fee Claims,

---

[12] Here, the requirements of section 1129(a)(14)-(16) of the Bankruptcy Code need not be met because the
Debtors: (i) have no domestic support obligations (§ 1129(a)(14)); (ii) are not individuals (§ 1129(a)(15)),
and (iii) are for-profit businesses (§ 1129(a)(16)).  *See* Demchick Declaration ¶¶ 62–64.

4850-7916-5685.v9

and Priority Tax Claims are not classified and are separately treated under the Plan.  The Plan

divides all other Claims and Equity Interests into twelve Classes:

| Class 1 | Other Priority Claims |
|---|---|
| Class 2 | Other Secured Claims |
| Class 3(A) | SC SJ Prepetition Secured Loan Claims |
| Class 3(B) | FMT Prepetition Secured Loan Claims |
| Class 4(A) | SC SJ General Unsecured Claims |
| Class 4(B) | FMT General Unsecured Claims |
| Class 4(C) | Fairmont General Unsecured Claim |
| Class 5 | Inter-Debtor Claims |
| Class 6(A) | SC SJ Subordinated Claims |
| Class 6(B) | FMT Subordinated Claims |
| Class 7(A) | SC SJ Equity Interest |
| Class 7(B) | FMT Equity Interest |

The Plan classifies each Claim or Equity Interest based on its legal nature or priority, and the

Claims or Equity Interests in each Class are "substantially similar."

36.    The Plan's classification scheme follows the Debtors' capital structure in that it

classifies equity separately from debt and secured debt separately from unsecured debt.  Other

aspects of the Plan's classification scheme are reasonably related to the nature of each type of

Claim or Equity Interest as well:

(a)    The Plan assigns Other Priority Claims to a separate Class because they are entitled to priority and hence different treatment under section 507(a) of the Bankruptcy Code and will be afforded the same treatment under the Plan.

(b)    The Plan groups Other Secured Claims in one Class because they are each Unimpaired and afforded the same treatment under the Plan.

(c)    The Plan properly assigns all Prepetition Secured Loan Claims to a Class for each Debtor because the claimants have different collateral than Other Secured Claims.

(d)    The Plan properly assigns the Fairmont General Unsecured Claim to a separate Class because, among other reasons, Fairmont is the only non-priority unsecured claimant with timely-filed proofs of claims against both Debtors (based upon prepetition contracts with each Debtor), which the Debtors have asserted are contingent,

unliquidated, and disputed.  All other general (non-priority) unsecured creditors hold claims, if at all, only against FMT.

(e)  The Plan assigns General Unsecured Claims and Subordinated Claims—which are all unsecured Claims—to separate Classes because they have different legal rights.  In particular, Subordinated Claims are subordinated to other unsecured claims under section 510 of the Bankruptcy Code.  However, as indicated above, no creditor has filed a Subordinate Claim against the Debtors, and the Debtors are otherwise not aware of any Subordinate Claims.

(f)  The Plan assigns Equity Interests to a separate class because they have different legal rights that are junior to Claims.

37.  The Plan's classification scheme satisfies the basic purposes of classification under section 1122 of the Bankruptcy Code.  The Debtors did not design the classification to disenfranchise any Impaired Class or render an Impaired Class's votes inconsequential.  The Debtors negotiated a Plan that classifies each Claim or Equity Interest based on its status under the Bankruptcy Code and other relevant non-bankruptcy law.  Accordingly, the Plan complies with section 1122 of the Bankruptcy Code.

## II.  Section 1123(a) – The Plan Contains All Mandatory Content

38.  In addition to the classification of claims and interests, there are seven requirements that the Plan must satisfy under section 1123(a) of the Bankruptcy Code.  As discussed below, the Plan satisfies all these requirements.[13]  11 U.S.C. § 1123(a); *see In re G-I Holdings Inc.*, 420 B.R. 216, 259 (D.N.J. 2009).

### a.  Section 1123(a)(1) – The Plan Designates Classes of Claims and Equity Interests

39.  Section 1123(a)(1) of the Bankruptcy Code requires that the Plan designate Classes of Claims, except those entitled to priority under sections 507(a)(2), 507(a)(3) and 507(a)(8) of the

---

[13] Section 1123(a)(8) contains an eighth requirement, which does not apply to the Debtors because they are entities, not individuals.

Bankruptcy Code, and Equity Interests. *See* 11 U.S.C. § 1123(a)(1). The Plan complies with section 1123(a)(1) because the Plan classifies all Claims and Equity Interests, except (i) administrative expenses, which are entitled to priority under section 507(a)(2), and (ii) Claims entitled to priority under section 507(a)(8).

> **b. Section 1123(a)(2) – The Plan Identifies Which Classes of Claims or Equity Interests Are Unimpaired**

40.  Section 1123(a)(2) of the Bankruptcy Code requires that the Plan specify every Class that is Unimpaired under the Plan. *See* 11 U.S.C. § 1123(a)(2). The Plan complies with section 1123(a)(2) because Section 3.3 of the Plan specifies that Classes 1, 2, 4(A), 6(A), and 7(A) are Unimpaired.

> **c. Section 1123(a)(3) – The Plan Specifies the Treatment of Impaired Classes of Claims or Equity Interests**

41.  Section 1123(a)(3) of the Bankruptcy Code requires that the Plan specify the treatment of each Class of Claims and Equity Interests that is Impaired. *See* 11 U.S.C. § 1123(a)(3). The Plan complies with section 1123(a)(3) because Section 4 of the Plan specifies that Classes 3(A), 3(B), 4(B), and 4(C) are Impaired and their treatment.

> **d. Section 1123(a)(4) – The Plan Treats Claims and Equity Interests in the Same Class Equally**

42.  Section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same treatment to every Claim or Equity Interest in the same Class. *See* 11 U.S.C. § 1123(a)(4). The Plan complies with section 1123(a)(4) because the Plan provides that every Claim or Equity Interest in the same Class is treated equally, unless the Holder of a Claim or Equity Interest agrees to less favorable treatment.

15

### e.   Section 1123(a)(5) – The Plan Provides Adequate Means for its Implementation

43.     Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.   *See* 11 U.S.C. § 1123(a)(5).   The Plan provides adequate and proper means for its implementation, including by providing for:

    (a)     the continued corporate existence of SC SJ and the limited purposes for which FMT will continue to exist after the Effective Date;

    (b)     the vesting of assets in each respective Post-Effective Date Debtor;

    (c)     the continuation of the Hotel business by, among other things, (i) SC SJ's entry into a new lease pursuant to which it will lease the Hotel to New Lessee as of the Effective Date and (ii) the execution of the New Hotel Management Agreement with Hilton, pursuant to which Hilton will manage the Hotel after the Effective Date;

    (d)     the execution of Post-Effective Date Secured Loan Documents that will, among other things, extend the maturity date of the Prepetition Secured Loan;

    (e)     the procurement of a Qualified Mezzanine Loan by SC SJ's immediate parent limited liability corporation, the proceeds of which will be used, subject to the terms thereof, to fund senior secured debt, reserves, the Hotel's reopening, and other Hotel-related costs;

    (f)     the procurement of funds from Eagle Canyon pursuant to the Eagle Canyon Commitment Letter, which funds will be used to pay certain Allowed Claims; and

    (g)     releases, exculpations, and an injunction.

Because the Plan provides adequate and proper means for its implementation, the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

### f.   Section 1123(a)(6) – The Plan Does Not Provide for the Issuance of Non-Voting Equity Securities and the Limited Liability Company Agreements for Reorganized SC SJ and New Lessee Include Prohibitions on the Issuance of Non-Voting Equity Securities

44.     Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of non-voting equity securities and requires amendment of a debtor's charter to so provide.   *See*

11 U.S.C. § 1123(a)(6). Here, the Plan does not provide for the issuance of non-voting equity securities in the Post-Effective Date Debtors, and all equity in the Post-Effective Date Debtors are voting securities. Moreover, section 3.05 of the limited liability company agreements of Reorganized SC SJ and New Lessee will include a prohibition on the issuance of non-voting equity securities. *See* Plan Supplement, Exs. M–N [Docket No. 664]. Consequently, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

> **g.  Section 1123(a)(7) – The Plan's Provisions Regarding the Independent Managers of the Post-Effective Date Debtors are Consistent with the Interests of the Estate's Stakeholders and Public Policy**

45.  Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7).

46.  The Plan satisfies section 1123(a)(7) of the Bankruptcy Code because (i) the Plan and the Plan Supplement identify the independent managers of Reorganized SC SJ and New Lessee and (ii) neither the Plan nor the Plan Supplement contain provisions that are inconsistent with the interests of creditors and equity security holders or with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officers, director, or trustee.

### III.  Section 1123(b) – The Plan Contains Discretionary Provisions Permissible Under the Bankruptcy Code

47.  Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be included in a chapter 11 plan. *See* 11 U.S.C. § 1123(b).

48.  Consistent with section 1123(b)(1) of the Bankruptcy Code, which provides that a plan may impair or leave unimpaired any class of claims or interest: Holders of Claims and Equity

4850-7916-5685.v9

Interests in Class 1 – Other Priority Claims; Class 2 – Other Secured Claims; Class 4(A) – SC SJ General Unsecured Claims; Class 6(A) – SC SJ Subordinated Claims; and Class 7(A) – SC SJ Equity Interest, are Unimpaired.

49.    Consistent with section 1123(b)(2) of the Bankruptcy Code, Section 8 of the Plan provides that all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (a) was previously assumed, assumed and assigned, or rejected by the Debtors pursuant to an order of the Court, including the *Order Authorizing the Debtors to Reject Amended and Restated Hotel Management Agreement and Owner Agreement Between Debtors and Fairmont* [Docket No. 152], (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (c) is the subject of a pending motion to assume filed by the Debtors before the Effective Date, or (d) is specifically designated as a contract or lease to be assumed or assumed and assigned on the Schedule of Assumed Contracts.

50.    Consistent with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, various provisions of the Plan, including Sections 4.7, 5.1, and 5.8, provide for the compromise and settlement of Claims, Interests, and other controversies.  For example, Section 4.7 provides for the Fairmont Release Consent Agreement and Section 5.8 implements and incorporates the terms of the Committee Settlement.  Additionally, on June 25, 2021, the Debtors filed with the Court a schedule of retained Causes of Action as an exhibit to the Plan Supplement. Consistent with section 1123(b)(3)(B) of the Bankruptcy Code, Section 10.11 of the Plan provides that the Reorganized Debtors retain and reserve all rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the

Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.

51.     Consistent with section 1123(b)(5) of the Bankruptcy Code, Section 4 of the Plan (a) leaves unaffected the rights of Holders of Claims or Equity Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 4(A) (SC SJ General Unsecured Claims), Class 6(A) (SC SJ Subordinated Claims), and Class 7(A) (SC SJ Equity Interest); and (b) modifies the rights of Holders of Claims or Equity Interests, as applicable, in Class 3(A) (SC SJ Prepetition Secured Loan Claims), Class 3(B) (FMT Prepetition Secured Loan Claims), Class 4(B) (FMT General Unsecured Claims), Class 4(C) (Fairmont General Unsecured Claim), Class 5 (Inter-Debtor Claims), Class 6(B) (FMT Subordinated Claims), and Class 7(B) (FMT Equity Interest).

52.     Finally, as permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan contains additional provisions that are not inconsistent with the Bankruptcy Code, including in:

(a)     Section 5 of the Plan regarding the Plan's implementation;

(b)     Section 6 of the Plan regarding distributions to Holders of Allowed Claims and Allowed Equity Interests;

(c)     Section 8 of the Plan on the treatment of Executory Contracts and Unexpired Leases;

(d)     Section 10 of the Plan as to certain releases, exculpations, and injunctions; and

(e)     Section 12 of the Plan regarding the Court's retention of jurisdiction over certain matters after the Effective Date.

53.     Each of the foregoing permissive provisions is consistent with the Bankruptcy Code and therefore complies with section 1123(b) of the Bankruptcy Code.

**IV.     The Release, Exculpation, and Injunction Provisions are Permissible**

54.     Section 10 of the Plan contains certain releases, an exculpation provision, and an injunction provision.  The releases, exculpation, and injunction provided by the Plan are an

important step to bring the Chapter 11 Cases to a conclusion and permit the Post-Effective Date Debtors to fully realize the benefits of the Plan and the restructuring contemplated thereby without the prospect of future litigation. The releases fairly reflect the contributions of value, including significant company-saving financing, provided by the applicable parties to the Debtors' Estates and the restructuring efforts.

### a. The Debtor Releases Are Appropriate and Should Be Approved

55. Except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan, Section 10.6 of the Plan provides for releases ("**Debtor Releases**") by the Debtors, the Post-Effective Date Debtors, and their Estates of the Debtor Released Parties, which includes (a) the Debtors; (b) the Post-Effective Date Debtors; (c) the DIP Lender; (d) the Prepetition Secured Lender; (e) all other Restructuring Support Parties; (f) New Lessee; (g) the Qualified Manager; (h) the Qualified Mezzanine Lender; (i) with respect to the Persons in clauses (a) through (h), each of their Related Persons; (j) the Committee; and (k) the Committee's Professionals (the "**Debtor Released Parties**"). The Debtor Releases are based on the Debtors' business judgment and meet the applicable legal standard because they are fair, reasonable, necessary, and integral elements of the Plan. The Plan and the Debtor Releases were negotiated in good faith and at arm's length among the Debtors and various stakeholders and are in the best interests of the Debtors' estates.

56. Section 1123(b) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." *See Coram Healthcare*, 315 B.R. at 334 ("The standards for approval of a settlement under section 1123 [of the Bankruptcy Code] are generally the same as those under [Bankruptcy] Rule 9019 . . . ."). Under Bankruptcy Rule 9019, a settlement of a cause of action should generally be

20

approved if it "exceed[s] the lowest point in the range of reasonableness." *In re Exaeris, Inc.*, 380

B.R. 741, 746 (Bankr. D. Del. 2008) (citing *Coram Healthcare*, 315 B.R. at 330).

57.    The release of an estate cause of action in the context of a chapter 11 plan will

generally be approved "if the release is a valid exercise of the debtor's business judgment, is fair,

reasonable, and in the best interests of the estate." *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In

re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a

plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's

business judgment, is fair, reasonable, and in the best interests of the estate."); *In re Aleris Int'l,

Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) (similar).  As

an exercise of its business judgment, a debtor's decision to release claims against third parties

under a plan is afforded deference.  *See, e.g.*, *In re Spansion*, 426 B.R. at 140 ("It is not appropriate

to substitute the judgment of the objecting creditors over the business judgment of the

[d]ebtors . . . ."); *Marvel Entm't Grp., Inc. v. Mafco Holdings, Inc. (In re Marvel Entm't Grp.,

Inc.)*, 273 B.R. 58, 78 (D. Del. 2002) ("'[U]nder the business judgment rule . . . a court will not

interfere with the judgment of a board of directors unless there is a showing of gross and palpable

overreaching.'  Thus, under the business judgment rule, a board's 'decisions will not be disturbed

if they can be attributed to any rational purpose' . . . ." (second alteration in original) (citations

omitted) (quoting *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719–20 (Del. 1971)).

58.    Here, the Debtor Releases are strictly limited in scope to causes of action related to

the Chapter 11 Cases, the Restructuring, the business or contractual arrangements between any

Debtor and the Debtor Released Parties, and certain related matters.  Importantly, the Debtors do

not believe that significant claims or Causes of Action exist against the Debtor Released Parties.

Notably, the Debtors did not have any prepetition relationship with the Qualified Manager or the

Qualified Mezzanine Lender, and New Lessee is a newly created entity that has no liabilities. Moreover, as detailed in the Disclosure Statement, prior to agreeing to the release, the Prepetition Secured Lender, the DIP Lender, and the Debtors' principals and other affiliates that are Debtor Released Parties analyzed whether potential claims and causes of action exist and have concluded that they do not.

59.    Moreover, in exchange for the Debtor Releases, the Debtors and Post-Effective Date Debtors are receiving substantial consideration.  Importantly, the Prepetition Secured Lender, the Qualified Manager, and the Qualified Mezzanine Lender required the releases in Section 10.6 of the Plan as a condition to supporting the proposed restructuring.  The waiver of default interest and Post-Effective Date Loan provided by the Prepetition Secured Lender, the New Hotel Management Agreement and $15 million of "key money" provided by the Qualified Manager, and the $25 million Qualified Mezzanine Loan provided by the Qualified Mezzanine Lender are the cornerstones of the Debtors' reorganization.  Therefore, the Debtors could not have accomplished the contemplated reorganization without granting the releases in Section 10.6 of the Plan.

60.    Additionally, the Prepetition Secured Creditor agreed to forbear from exercising certain rights and remedies and consented to the Debtors' use of cash collateral.  It also waived the right to receive Default Interest under the terms of the Plan and agreed to a restructuring of the Prepetition Secured Loan by, among other things, extending the maturity date.

61.    Additionally, the DIP Lender and Restructuring Support Parties (including Sam Hirbod and Eagle Canyon Capital, LLC, which are the Debtors' indirect parent company and ultimate beneficial owner, respectively) have provided financing or credit support to the Debtors in connection with these Chapter 11 Cases or are doing so pursuant to the Plan to facilitate the Debtors' emergence from Chapter 11.  For example, Eagle Canyon Capital, LLC has provided a

4850-7916-5685.v9

commitment letter pursuant to which it has agreed to fund certain creditor recoveries under the Plan absent funding from other sources.  Mr. Hirbod has also agreed to give a "springing" guaranty in support of the treatment of Class 4(C) under the Plan.  Without that support, the Debtors would not have been able to accomplish the contemplated reorganization.

62.    Without the Debtor Releases, it is unlikely that certain of the Debtor Releasees would have consensually participated in these Chapter 11 Cases or would have supported the Debtors' restructuring.  Consequently, the Debtor Releases are narrowly tailored as necessary for the Debtors' reorganization and are essential components of the Plan that should be approved as a sound exercise of the Debtors' business judgment.

63.    Additionally, in evaluating the fairness and reasonableness of releases provided by debtors, some courts apply the non-exclusive and disjunctive factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999) ("**Zenith Factors**").[14]  Here, the Debtors satisfy the Zenith Factors: (1) an identify of interest exists because the Debtors are required to indemnify certain of the other Debtor Released Parties and all the Debtor Releasees share a common goal in confirming the Plan;[15] (2) the Debtor Released Parties have made substantial contributions to the

---

[14] The *Zenith* Factors are "(1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction."  *In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (citing *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994)).

[15] *See In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del. 2011), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011) (noting that an identity of interest between the debtors and the settling parties existed where such parties "share[d] the common goal of confirming the DCL Plan and implementing the DCL Plan Settlement").

4850-7916-5685.v9

Plan by[16] (a) providing mutual releases to the Debtors (subject to certain exceptions); (b) providing

the DIP financing to fund these Chapter 11 Cases; (c) providing necessary funding or credit support

to the Post-Effective Date Debtors as detailed above; (d) committing to fund distributions for any

Allowed Class 4(C) Claims; and (e) expending significant time and resources negotiating the

Plan;[17] (3) the Debtor Releases are essential to the Plan because they will allow the Debtors to

reopen the Hotel, restore jobs and consummate the Plan without concerns over future litigation;

(4) the Debtors' stakeholders support the Plan (*see* Voting Certification); and (5) the Plan provides

for a recovery to Holders of FMT General Unsecured Claims (which is being funded, at least in

part, by certain Debtor Released Parties).

64.     On this record, the Debtor Releases are justified, in the best interests of the Debtors'

creditors, and should be approved under section 1123(b)(3)(A) of the Bankruptcy Code.

### b.  The Third-Party Releases Are Consensual and Should Be Approved

65.     Section 10.7 of the Plan provides for the release from Causes of Action (the "**Third
Party Releases**") by certain non-debtor third parties and Holders of Claims (the "**Releasing
Parties**")[18] against the "**Third Party Released Parties**."[19]  The Third Party Released Parties

---

[16] *See supra* ¶¶ 59–61 (summary of the substantial contributions of the Debtor Released Parties).

[17] *See Zenith*, 241 B.R. at 111.

[18] The Releasing Parties are: (a) the Holders of all Claims or Interests that vote to accept the Plan, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the Holders of all Claims or Interests that vote to reject the Plan but do not opt out of granting the releases set forth herein, (d) the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (e) the Holders of all Claims or Interests that are presumed to accept the Plan and do not file objections to confirmation of the Plan, (f) the Released Parties, and (g) the Committee.  Notwithstanding the foregoing, any Holders of Claims or Interests that would otherwise fall into (a) – (e) but that do not receive actual notice are not Releasing Parties.

[19] The Third Party Released Parties are: (a) the Debtors; (b) the Post-Effective Date Debtors; (c) the DIP Lender; (d) the Prepetition Secured Lender; (e) all other Restructuring Support Parties; (f) New Lessee; (g) Fairmont, but solely with respect to FMT General Unsecured HMA Claims; (h) Qualified Manager; (i) Qualified Mezzanine Lender; (j) with respect to the Persons in clauses (a) through (i), each of their Related Persons; (k) the Committee; and (l) the Committee's Professionals.  Notwithstanding the

represent a small group of parties that have actively participated in the Debtors' restructuring and whose contributions and concessions were critical to the Plan's formation.  The Releasing Parties have consented to the Third-Party Releases.[20]   Consistent with established precedent in this District, the Releasing Parties in Impaired and entitled to vote Classes 3(A), 3(B), 4(B), and 4(C) have either (i) voted to accept the Plan and did not opt-out of the Third Party Releases; (ii) abstained from voting on the Plan and did not opt-out of the Third-Party Releases; or (iii) with respect to Releasing Parties in Unimpaired Classes 1, 2, 4(A), 6(A), and 7(A), such Claim Holders did not opt-out of the Third Party Releases or objected to confirmation of the Plan.

66.     "Courts in this jurisdiction [Delaware] have consistently held that a plan may provide for a release of third-party claims against a non-debtor upon consent of the party affected." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013) (citing *In re Spansion, Inc.*, 426 B.R. at 144); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) ("Because [the release] is consensual, there is no need to consider the *Zenith* factors.").

67.     With respect to holders of claims or interests that fail to opt out of third party releases, Judges in this District have concluded that holders of claims or interests are deemed to have consented to the third party release if three requirements are met: (i) the release provision is conspicuously disclosed; (ii) parties received sufficient notice of the plan's release provision; and (iii) the releasing party had an opportunity to opt out of the release and failed to do so.  *See, e.g.*, Confirmation Hr'g Tr. 62:10-14, *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. Oct. 2018) ("I have ruled numerous times that 'check the box' isn't required for a creditor to be

---

foregoing, any Person that opts out of the releases set forth in Section 10.7 of the Plan shall not be deemed a Released Party thereunder.

[20] Twenty creditors in Class 4(B) FMT General Unsecured Claims elected to opt out of the Third-Party Release.  *See* Daversa Declaration, Ex. B.

4850-7916-5685.v9

deemed—to have been deemed to consent to something, that it's sufficient to say, here's your notice, this is what's going to happen and if you don't object, you'll have been deemed to consent"); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305–06 (Shannon, J.) (Bankr. D. Del. 2013) ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots. Under these circumstances, the Third Party Releases may be properly characterized as consensual and will be approved.").[21]

68.    The Debtors have satisfied each of these requirements.  *First*, the Disclosure Statement, Ballots, and Opt-Out Election Forms[22] conspicuously disclosed the option of opting out of the Third-Party Release for applicable Holders of Claims and Equity Interests.  The Debtors (a) coordinated with the U.S. Trustee on these issues, and (b) undertook measures to ensure that the provisions referencing the releases in the Ballots and Opt-Out Election Forms were clear and conspicuous such that Holders of Claims and Equity Interests would be fully apprised of their right to opt out and of how to do so.

69.    *Second*, the Releasing Parties received adequate notice of the Third-Party Releases. On June 4, 2021, Stretto began delivering via first-class mail, among other documents, the Plan, the Confirmation Hearing Notice, the Disclosure Statement, Ballots and Opt-Out Forms (as applicable) to Holders of Claims and Equity Interests (or their respective nominees).  *See* Docket No. 423.  And, on June 8, 2021, the Debtors caused the Confirmation Hearing Notice to be

---

[21] *Accord In re Paragon Offshore PLC*, No. 16-10386 (CSS) (Bankr. D. Del. June 7, 2017), at 26–27.

[22] The Opt-Out Election Form was provided to Unimpaired Classes with non-voting status that did not receive ballots.  *See Affidavit of Service of Solicitation Materials* [Docket No. 423] and *Supplemental Affidavit of Service* [Docket No. 526].

4850-7916-5685.v9

published in *The New York Times*.  *See Affidavit of Publication of Edgar Noblesala for The New York Times* [Docket No. 424].  The published notice contained conspicuous disclosure of the "releases of certain third-party claims and causes of action" and specifically referenced Section 10.7 of the Plan.  Moreover, the Voting Agent made available online copies of, among other things, the Plan, Disclosure Statement, Ballots, and Opt-Out Forms on its website.  The foregoing notice was sufficient to notify Holders of Claims and Equity Interests of the option of opting out of the Third-Party Releases.  Generally, mailing a notice by first-class mail to the last known address is sufficient to satisfy due process.  *See, e.g., In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir. 1995); *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 196 (B.A.P. 9th Cir. 1998).  The Holders of Claims and Equity Interests therefore received adequate and sufficient notice of the ability to opt out of the Third-Party Releases.

70.    *Third*, the Releasing Parties had ample opportunity to review their solicitation packages and opt out.  As noted above, Stretto served the solicitation materials on or around June 4, 2021.  The Voting Deadline and the deadline to submit Opt-Out Forms was August 4, 2021.  The Releasing Parties therefore had ample time to review the Third-Party Releases and to opt out. Indeed, a small group of creditors exercised their opt-out rights.[23]

71.    Given the extensive disclosure and time for objecting to the Third Party Releases, the Court should approve the Third Party Releases as fair, consensual, and consistent with established practices in this District.

---

[23] *See supra* n.20.

4850-7916-5685.v9

### c. The Exculpation Provision Is Appropriate Under the Circumstances of These Chapter 11 Cases

72.     Section 10.9 of the Plan provides an exculpation and limitation of liability for the Exculpated Parties[24] such that parties that have participated in good faith in, among other things, formulating and negotiating the Plan are not liable for their efforts in connection therewith (the "**Exculpation Provision**").

73.     Exculpation provisions are appropriate where the exculpated parties have participated in good faith and provided substantial contributions to a debtor's reorganization. *See In re PWS Holding Corp.*, 228 F.3d 224, 246–47 (3d Cir. 2000) (approving plan exculpation provision with willful misconduct and gross negligence exceptions); *In re Washington Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011) (noting that the "Third Circuit has held that a creditors' committee, its members, and estate professionals may be exculpated under a plan for their actions in the bankruptcy case except for willful misconduct or gross negligence").

74.     The Exculpation Provision in the Plan covers only postpetition acts of estate fiduciaries.  Accordingly, the Exculpation Provision is consistent with established practice in this and other jurisdictions.  Each of the Exculpated Parties has participated in these Chapter 11 Cases in good faith.  Without their support, the Debtors would have been unable to execute their reorganization strategy.  The Exculpation Provision is also narrowly tailored to address a discrete purpose: To protect estate fiduciaries who made critical contributions to the success of these

---

[24] "Exculpated Parties" means, collectively, and in each case in their capacity as such: (a) the Debtors; (b) the Debtors' officers, directors, managers, independent managers, principals, and Professionals; (c) the Committee; (d) the Committee's Professionals; and (e) the members of the Committee solely in their capacity as such.  For the avoidance of doubt, Fairmont is not an Exculpated Party in its individual, non-Committee member capacity or with respect to any actions, omissions, or other conduct taken in its individual, non-Committee member capacity, including, but not limited to, actions, omissions, or other conduct that resulted in a violation of the automatic stay or otherwise caused harm to the Debtors or their estates.  Plan § 1.1.

Chapter 11 Cases from collateral attacks related to good faith acts in connection with the Debtors' restructuring.  Accordingly, the Exculpation Provision is appropriate and should be approved.

### d.   The Injunction Provision Is Necessary to Enforce the Releases and Exculpation

75.      Section 10.10 of the Plan provides for an injunction that is necessary to implement the Plan and its release and exculpation provisions.  Injunction provisions are appropriate where "the injunction plays an important part in the debtor's reorganization plan." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 293 (2nd Cir. 1992).  The Plan's injunction provision is necessary to effectuate the releases and exculpation provisions in the Plan and to protect the Released Parties and Exculpated Parties from potential litigation by prepetition creditors after the Effective Date. Any such litigation would hinder the efforts of the Post-Effective Date Debtors to fulfill their responsibilities effectively as contemplated under the Plan and, thereby, undermine the Debtors' efforts to maximize value for all holders of Claims.  The Plan's injunction provision is therefore a key component of the Plan because it enforces the release and exculpation provisions that are critical to the Plan.  As such, to the extent the Court finds that the release and exculpation provisions are appropriate, the Debtors respectfully request that the injunction provision be approved in conjunction therewith.

## B.    Section 1129(a)(2) – The Debtors Have Complied with All Applicable Provisions of the Bankruptcy Code

76.      Under section 1129(a)(2) of the Bankruptcy Code, the Court may confirm the Plan only if a debtor "complies with the applicable provisions of [the Bankruptcy Code]," especially the disclosure requirements in sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(2); *PWS Holding Corp.*, 228 F.3d at 248 ("[Section] 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125.").  As detailed below, the Debtors have complied with the Bankruptcy Code's disclosure requirements.

29

77.     Section 1125 of the Bankruptcy Code prohibits the solicitation of votes for or against a plan from holders of claims or interests until the plan (or a summary of the plan) and a disclosure statement that contains "adequate information" are sent to those holders.  *See* 11 U.S.C. § 1125(b).  Congress designed the Bankruptcy Code's "robust" disclosure obligations, including those in section 1125, "to end the 'undesirable practice . . . of soliciting acceptance or rejection at a time when creditors and stockholders were too ill-informed to act capably in their own interests.'"  *Indianapolis Downs*, 486 B.R. at 295 (quoting *In re Clamp-All Corp.*, 233 B.R. 198, 208 (Bankr. D. Mass. 1999)).

78.     Here, in the Solicitation Procedures Order, the Court found that the Disclosure Statement contained adequate information within the meaning of section 1125 of the Bankruptcy Code and approved (a) all materials to be distributed to Holders of Claims entitled to vote on the Plan, (b) the timing and method of the materials' delivery, and (c) the rules for tabulating votes to accept or reject the Plan.  Likewise, the Court approved the adequacy of the Disclosure Statement Supplement following the impairment of Class 4(C) and conditionally authorized its solicitation.

79.     Therefore, the Debtors have met the requirements of section 1125 of the Bankruptcy Code, as well as the related requirements in Bankruptcy Rules 3017 and 3018, and thereby complied with section 1129(a)(2).

## C.     Section 1129(a)(3) – The Debtors Have Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law

80.     Under section 1129(a)(3) of the Bankruptcy Code, the Court may confirm a plan only if a debtor "proposed [it] in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Although the Bankruptcy Code does not define "good faith," the U.S. District Court for the District of Delaware provided guidance as to the proper inquiry in *In re W.R. Grace & Co.*:

> [I]t has been established that a determination of good faith associated with a Chapter 11 reorganization plan requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal.  However, such inquiries must be done on a case-by-case basis because good faith determinations are factually specific.  In assessing the totality of the circumstances, a court has "considerable discretion in finding good faith."  Moreover, the bankruptcy courts are in the best position to ascertain the good faith of the parties' proposals.

475 B.R. 34, 87 (D. Del. 2012) (citing *Coram Healthcare*, 271 B.R. at 234) (internal citations omitted).

81.    The concern of the Court's factual inquiry is "'the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'"  *PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)).  The U.S. Supreme Court has identified the two goals of chapter 11 as (1) "preserving going concerns" and (2) "maximizing property available to satisfy creditors."  *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).  The Court also should consider whether a plan was "proposed with honesty and good intentions" and whether the debtor dealt with its creditors fairly.  *See W.R. Grace & Co.*, 475 B.R. at 87–89.

82.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of reorganizing and maximizing recoveries for creditors.  The terms of the Plan, the treatment of creditors thereunder, and the process leading to the Plan's formulation which is part of the record in the Chapter 11 Cases, provide evidence of the good faith of the Debtors and parties-in-interests and of their respective agents and professionals who were involved in the negotiation of the Plan.  Moreover, the support of the Debtors' primary constituencies and the overwhelming acceptance of the Plan by most Holders of Claims that voted on the Plan, reflect the overall fairness of the Plan and are an acknowledgment by the Debtors' stakeholders that the Plan was proposed in good faith and for proper purposes.  Because the totality of the circumstances establish that the Debtors proposed the Plan in good faith, the Debtors have satisfied section 1129(a)(3).

4850-7916-5685.v9

**D.      Section 1129(a)(4) – Payments Have Been Approved by the Court or Remain Subject to the Court's Approval**

83.      Section 1129(a)(4) of the Bankruptcy Code requires that any and all fees promised or received from a debtor's estate in connection with or in contemplation of a chapter 11 case must be disclosed and subject to the court's approval.  Here, all payments made or to be made by the Debtors for services, costs, or expenses in connection with these Chapter 11 Cases, including all Professional Fee Claims, have been approved by, or are subject to the approval of, this Court as reasonable.  Furthermore, Section 2.2 of the Plan provides that all Professionals retained by the Debtors and the Estates are required to file final fee applications with this Court no later than 30 days after the Effective Date.  Section 12(j) of the Plan provides that this Court will retain jurisdiction to grant and deny applications for compensation or reimbursement of expenses. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

**E.      Section 1129(a)(5) – The Debtors Have Made the Necessary Disclosures Regarding the Post-Effective Date Debtors' Managers and Insiders**

84.      Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual to serve as a director or officer of the debtor or a successor to the debtor under the plan.  Although the Debtors do not have directors or officers, the Debtors have disclosed the identities and affiliations of the independent managers of Reorganized SC SJ and New Lessee in the Plan Supplement.  The Plan Supplement also discloses the identities and affiliations of the Post-Effective Date FMT Manager.  The appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Equity Interests in the Debtors and with public policy.

4850-7916-5685.v9

**F.      Section 1129(a)(6) – The Plan Does Not Provide for a Change in Rates Over Which a Governmental Regulatory Commission Has Jurisdiction**

85.      Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  The Debtors are not engaged in business activities involving rates that are subject to government regulation.  Accordingly, the Plan does not provide for rate changes by the Debtors subject to the jurisdiction of any regulatory commission requiring governmental regulatory approval, and section 1129(a)(6) is inapplicable.

**G.      Section 1129(a)(7) – The Plan Satisfies the "Best Interests" Test**

86.      Under section 1129(a)(7) of the Bankruptcy Code, the Court may confirm the Plan only if each Holder of a Claim or Equity Interest in an Impaired Class has accepted the Plan or:

> will receive or retain under the [Plan] on account of such [Claim] or [Interest] property of a value, as of the [Effective Date], that is not less than the amount that such [Holder] would so receive or retain if the [Debtors were] liquidated under chapter 7 of [the Bankruptcy Code] on such date.

11 U.S.C. § 1129(a)(7).  This requirement in section 1129(a)(7) is commonly referred to as the "best interests test."  "Under the test, every creditor to a Chapter 11 reorganization plan must receive at least the liquidation value of its claim under the plan as it would in a Chapter 7 proceeding against the debtor in order for the court to find the plan is in the creditors' best interest." *W.R. Grace & Co.*, 475 B.R. at 141.  Courts estimate "this liquidation value by 'conjur[ing] up a hypothetical [C]hapter 7 liquidation that would be conducted on the effective date of the plan.'" *Id.* (quoting *In re Affiliated Foods, Inc.*, 249 B.R. 770, 787 (Bankr. W.D. Mo. 2000)) (alterations in original).  Accordingly, analysis under section 1129(a)(7) "is 'not an exact science.'" *W.R. Grace & Co.*, 475 B.R. at 142 (quoting *Affiliated Foods*, 249 B.R. at 788).  The Court must "only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record." *W.R. Grace & Co.*, 475 B.R. at 142.

33

87.     As demonstrated in the Liquidation Analysis attached as Exhibit 3 to the Disclosure Statement [Docket No. 391-3], several classes would receive no distribution in a chapter 7 liquidation.  In contrast, estimated recovery to Holders of Claims under the Plan is as follows:

| Debtor | Description | Estimated Recovery on Allowed Claim/Interest Under Plan | Estimated Recovery in Liquidation |
|--------|-------------|---------------------------------------------------------|-----------------------------------|
| FMT | Class 1: Other Priority Claims | 100% | 0% |
| FMT | Class 2: Other Secured Claims | None known | None known |
| FMT | Class 3(B): FMT Prepetition Secured Loan Claims | 2.6% | 100% |
| FMT | Class 4(B): FMT General Unsecured Claims | 25% | 0% |
| FMT | Class 4(C): Fairmont General Unsecured Claim | 100% | 0% |
| FMT | Class 5: Inter-Debtor Claims | 0% | 0% |
| FMT | Class 6(B): FMT Subordinated Claims | None known | None known |
| FMT | Class 7(B): FMT Equity Interest | 0% | 0% |
| SC SJ | Class 1: Other Priority Claims | No Non-Duplicative Known | No Non-Duplicative Known |
| SC SJ | Class 2: Other Secured Claims | 100% | 100% |
| SC SJ | Class 3(A): SC SJ Prepetition Secured Loan Claims | 100% | 100% |
| SC SJ | Class 4(A): SC SJ General Unsecured Claims | None Known | None known |
| SC SJ | Class 4(C): Fairmont General Unsecured Claim | 100% | 0% |
| SC SJ | Class 5: Inter-Debtor Claims | 0% | 0% |
| SC SJ | Class 6(A): SC SJ Subordinated Claims | None known | None known |
| SC SJ | Class 7(A): SC SJ Equity Interest | 100% | 0% |

88.     Absent confirmation of the Plan, the recovery for Claims in all but three Classes would be zero.  No creditor has asserted that it would receive more under chapter 7 than it will receive under the Plan, and the overwhelming acceptance of the Plan by creditors in every Class demonstrates that they believe they will benefit from confirmation.  Because Holders of Claims or Equity Interests in Impaired Classes are receiving at least as much value as they would receive if the Chapter 11 Cases were converted to cases under chapter 7, the Plan satisfies the "best interests" test of section 1129(a)(7) of the Bankruptcy Code.

4850-7916-5685.v9

**H.      Section 1129(a)(8) – The Requirements of Section 1129(a)(8) Are Substantively Satisfied; Alternatively, the Plan Can be Confirmed Under the "Cram Down" Provisions of Section 1129(b)**

89.      Under section 1129(a)(8) of the Bankruptcy Code, the Court may confirm the Plan if each Class of Claims or Equity Interests (a) has accepted the Plan or (b) is not Impaired under the Plan.  *See* 11 U.S.C. § 1129(a)(8).  However, a court may still confirm a plan under section 1129(b) notwithstanding the requirements of section 1129(a)(8) "as long as the plan meets the other requirements of Section 1129(a), and 'does not discriminate unfairly, and is fair and equitable' as to any dissenting impaired class.'" *Armstrong World Indus.*, 432 F.3d at 512 (quoting 11 U.S.C. § 1129(b)(1)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 646 (2d Cir. 1988) ("A plan of reorganization must either be accepted by each impaired class of claims or interests or meet certain rigid requirements with respect to each non-accepting class.") (internal citation omitted).

**I.      The Plan is Confirmable as a Fully Consensual Plan Under Section 1129(a)(8)**

90.      Here, the Plan is confirmable as a fully consensual plan under section 1129(a) because every impaired class has accepted the Plan by (i) casting a ballot in favor of the Plan (in the case of Classes 3(A), 3(B), 4(B) and 4(C)); or (ii) being a proponent or sponsor of the Plan (in the case of Class 5 (Inter-Debtor Claims) and Class 7(B) (FMT Equity Interests)), and thereby supporting and accepting the Plan.[25] *See generally* 11 U.S.C. § 1129(b)(i) (cram down applies only as to each class of claims or interests that "has not accepted[] the plan").

---

[25] As noted above, no creditor has filed a subordinate claim against the Debtors, and the Debtors are not aware of any claims under Class 6(B) (FMT Subordinated Claims).  Consequently, Class 6(B) does not prevent confirmation of the Plan under section 1129(a) as a fully consensual plan.

4850-7916-5685.v9

**II.     Alternatively, the Plan Can be Confirmed Under the "Cram Down" Provisions of Section 1129(b)**

91.     If the Court finds that Classes 5, 6(B), and 7(B) have not accepted the Plan despite (a) there being no creditors (in the case of Class 6(B)) or (b) the sole Holders of Claims and Equity Interests in Classes 5 and 7(B) being the proponents and sponsors of the Plan, then the Plan can still be confirmed because section 1129(b)(1)(C)(ii)—the only potentially applicable cram down provision—is easily satisfied in that there are no interests junior to the equity interest holder in FMT as a matter of undisputed fact.

**I.     Section 1129(a)(9) – The Plan Provides for the Payment of Claims and Administrative Expenses with Priority in Accordance with Section 1129(a)(9)**

92.     Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims entitled to priority under section 507(a) receive specified cash payments under the plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code sets forth the treatment the plan must provide.

93.     The treatment of Allowed Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9) by providing for payment of such Claims, to the extent allowed, on the Effective Date (or as otherwise provided under the Plan).   *See* Plan § 2.   Accordingly, the Plan complies with the mandatory treatment of certain priority claims as required by section 1129(a)(9) of the Bankruptcy Code.

**J.     Section 1129(a)(10) – At Least One Class That Would be Impaired Under the Plan Voted to Accept the Plan**

94.     Pursuant to section 1129(a)(10) of the Bankruptcy Code, confirmation of the Plan requires that:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

36

11 U.S.C. § 1129(a)(10); *accord In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242-43 (3d Cir. 2004) (quoting 11 U.S.C. § 1129(a)(10)).

95.     The requirements of section 1129(a)(10) are met because Classes 3(A), 3(B), 4(B), and 4(C)—each of which is an Impaired Class—voted to accept the Plan, without the inclusion of ballots cast by insiders.  *See* Daversa Declaration ¶ 19.

**K.     Section 1129(a)(11) – The Plan is Feasible**

96.     Pursuant to section 1129(a)(11) of the Bankruptcy Code, the Court may confirm the Plan only if:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  Put differently, the Plan "must be feasible."  *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (internal quotation marks omitted).

97.     Section 1129(a)(11) requires the Court "to determine independently whether the Plan is workable and has a reasonable likelihood of success."  *Drexel Burnham*, 138 B.R. at 762.  However, section 1129(a)(11) "does not require a plan's success to be guaranteed."  *Am. Capital Equip.*, 688 F.3d at 156.  Only "a reasonable assurance of success" is required.  *Johns-Manville Corp.*, 843 F.2d at 649.  If there is a reasonable probability that the Plan can be completed, then the Plan is feasible.  *See Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) ("[T]he feasibility test contemplates 'the probability of actual performance of the provisions of the plan. . . .  The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'") (quoting *Chase Manhattan Mortg. & Realty Trust v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)).

98.     The feasibility of the Plan is well supported on account of several factors, including:

(a) the capital structure is considerably improved based on the restructuring of the Prepetition Secured Loan and infusion of capital via the Qualified Mezzanine Loan;

(b) the earning potential of the Hotel has increased based on the enhanced pipeline of business offered by Hilton's strong presence in the group event segment and its experience managing large, convention-oriented properties;

(c) the economic conditions for the hotel industry have improved dramatically over the duration of the Chapter 11 Cases with the rollout of vaccines and rollback of work and travel restrictions; and

(d) the funding and commitments from Eagle Canyon under the Eagle Canyon Commitment Letter may be used as necessary to pay distributions under the Plan on and after the Effective Date.

99.    Additionally, the pro formas in Exhibits R and S to the Plan Supplement demonstrate a "reasonable assurance of success."  *See* Docket No. 664.

100.    Considering the improved liquidity, earning potential, economic conditions, and pro formas, the Hotel has a high likelihood of success, the prospect for liquidation or further reorganization is low, and therefore the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.    Section 1129(a)(12) – The Plan Provides for the Payment of Necessary Fees**

101.    Under section 1129(a)(12) of the Bankruptcy Code, the Court may confirm the Plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."  Pursuant to Sections 2.1 and 5.3 of the Plan, all statutory fees payable under 28 U.S.C. § 1930 will be paid by the Debtors or the Post-Effective Date Debtors, as applicable, until the Chapter 11 Cases are closed.  Accordingly, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

**M.    Section 1129(a)(13) – The Plan Provides for Continuation of Retiree Benefits**

102.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits, as

38

defined in section 1114(a) of the Bankruptcy Code, be continued after the effective date of a plan "for the duration of the period the debtor has obligated itself to provide such benefits."

103.     As reflected in the Plan Supplement, the Plan provides for the assumption and continuance by New Lessee of FMT's obligations under various collective bargaining agreements and the related pension funding obligations, including (a) the collective bargaining agreement, dated as of November 1, 2019, between the Fairmont Hotel, San Jose and the International Union of Operating Engineers, Stationary Engineers, Local 39; (b) the collective bargaining agreement, dated as of July 1, 2017, between District Council 16 and Northern California Painting and Finishing Contractors Association and the Fairmont Hotel, San Jose; and (c) the collective bargaining agreement, dated as of July 1, 2018, between UNITE H.E.R.E.! Local 19 International Union and FMT, including that certain memorandum of understanding dated as of May 19, 2021.

104.     Consequently, the Plan provides for the continuation of retiree benefits and satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**N.     Conclusion – The Court Should Confirm the Plan under Section 1129**

105.     In sum, the Debtors have shown by a preponderance of the evidence that all requirements of section 1129(a) are satisfied.  The Debtors also have demonstrated that, if the requirements of section 1129(a)(8) are not met, then the Plan satisfies section 1129(b)(1)(C)(ii) because no interests junior to those of the FMT equity holder exist.  For these reasons, the Debtors submit that the Plan should be confirmed.

**PART III**
**ALL OBJECTIONS TO THE PLAN HAVE BEEN RESOLVED**

106.     Only two objections to the Plan and one reservation of rights were filed and each has been resolved.

4850-7916-5685.v9

107.     On July 2, 2021, Fairmont objected to the Plan [Docket No. 525]. Fairmont's objection has been consensually resolved with revisions to the treatment of Class 4(C) and with additions to Section 5 of the Plan addressing the criteria by which a Fairmont General Unsecured Claim may become an Allowed Claim and the mechanics for paying any such Allowed Claim. As part of the consensual resolution, Section 4.7 of the Plan also requires Fairmont to withdraw its objection and support confirmation of the Plan.

108.     On July 2, 2021, the United States, on behalf of the IRS, objected to the Plan [Docket No. 523]. The Debtors and the U.S. Attorney's Office have consensually resolved the objection by adding certain provisions in the proposed Confirmation Order. Those provisions clarify, *inter alia*, (i) the limitations of releases in the Plan as to liabilities to the United States; (ii) the application of interest accrual for the United States' administrative expense claims and priority tax claims; and (iii) the viability of claims by the United States against the Debtors' or the Debtors' Estates arising out of unfiled tax returns or a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. *See* Confirmation Order ¶ 32.

109.     On August 4, 2021, "**ExteNet**" filed a *Reservation of Rights of ExteNet Systems (California), LLC to Object to Notice of Assumption or Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 626]. The Debtors and ExteNet have consensually resolved the matter by including certain provisions in the proposed Confirmation Order. Those provisions set an agreed cure amount and payment schedule associated with the assignment and assumption of the ExteNet Contract by Debtor FMT to New Lessee upon the occurrence of the Effective Date. *See* Confirmation Order ¶ 19(iv).

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that the Court confirm the Plan and grant the Debtors such other and further relief as the Court deems just and proper.

4850-7916-5685.v9

Dated: August 13, 2021
      Wilmington, Delaware

COLE SCHOTZ P.C.

*/s/ Justin Alberto*
Justin Alberto (No. 5126)
Patrick Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

– and –

PILLSBURY WINTHROP SHAW PITTMAN LLP
Patrick Potter (admitted *pro hac vice*)
Dania Slim (admitted *pro hac vice*)
Rahman Connelly (admitted *pro hac vice*)
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8928
Facsimile: (202) 663-8007
patrick.potter@pillsburylaw.com
dania.slim@pillsburylaw.com
rahman.connelly@pillsburylaw.com

*Counsel to the Debtors and*
*Debtors in Possession*

41